**STATE of Minnesota, Respondent,**

v.

**Keith William GRUBE, Appellant.**

No. C1–94–518.

Supreme Court of Minnesota.

May 12, 1995.

---

**486**

John M. Stuart, State Public Defender, Lawrence W. Pry, Asst. State Public Defender, St. Paul, for appellant.

Keith William Grube, Stillwater, pro se.

Hubert H. Humphrey, III, Atty. Gen., Mary J. Theisen, St. Paul, and Roger L. Swenson, Lac Qui Parle County Atty., Madison, for respondent.

## OPINION

PAGE, Justice.

Keith William Grube was convicted by a Lac Qui Parle County jury of first-degree murder under Minn.Stat. § 609.185(6) (1992),[1] and second-degree murder under Minn.Stat. §§ 609.19(1) and (3) (1994), for the October 26, 1993, strangulation death of his ex-wife, Cindy Grube.[2] Grube was acquitted of first-degree murder under Minn.

Stat. § 609.185(1) (1994). The trial court sentenced Grube to life imprisonment.

On appeal from his judgment of conviction, Grube argues that: (1) his rights under the Confrontation Clauses of the United States and Minnesota Constitutions were violated when the trial court admitted into evidence hearsay statements made by Cindy Grube; (2) Minn.Stat. § 609.185(6) is unconstitutionally vague; and (3) the evidence introduced at trial is insufficient as a matter of law to sustain his conviction under Minn.Stat. § 609.185(6). By *pro se* brief, Grube raises four additional issues: (1) whether his rights under the Due Process Clause of the United States Constitution were violated by the trial court's failure to give a "third verdict" instruction; (2) whether the trial court erred: (a) by failing to instruct the jury on the "past pattern of domestic abuse" requirement, (b) by admitting evidence of domestic abuse committed out of state, and (c) by failing to follow the requirements of Minn.Stat. § 609.185(6); (3) whether his rights under the Due Process Clause of the United States Constitution were violated by the state's submission of multiplicious counts to the jury; and (4) whether he is entitled to a dispositional departure on his sentence. We affirm.

Grube testified at trial and admitted to killing Cindy Grube. According to Grube's testimony, he left Minnesota with two other men on Thursday, October 21, 1993, to construct canopies at out-of-state gas stations.[3] The three men traveled by automobile to Wisconsin and Iowa. After finishing their

---

1. Minn.Stat. § 609.185 provides in relevant part:
   Whoever does any of the following is guilty of murder in the first degree and shall be sentenced to imprisonment for life:

   \*   \*   \*   \*   \*   \*

   (6) causes the death of a human being under circumstances other than those described in clause (1), (2), or (5) while committing domestic abuse, when the perpetrator has engaged in a past pattern of domestic abuse upon the victim and the death occurs under circumstances manifesting an extreme indifference to human life.

   \*   \*   \*   \*   \*   \*

   For purposes of clause (6), "domestic abuse" means an act that:
   (1) constitutes a violation of section 609.221, 609.222, 609.223, 609.224, 609.342, 609.343, 609.344, 609.345, 609.713; and

   (2) is committed against the victim who is a family or household member as defined section 518B.01, subdivision 2, paragraph (b).
   Minn.Stat. § 518B.01, subd. 2(b) (1994), defines family or household member to include former spouses.

2. The Grube's were married in November 1988 and divorced in January 1991. As part of the divorce, Cindy Grube was awarded custody of their only child, a daughter named Kacie.

3. In addition to his job constructing canopies, Grube worked as a guard at the Prairie Correctional Facility. Cindy Grube also worked as a guard at the facility.

work in Massena, Iowa, at 8:00 p.m. on Monday, October 25, they began the return trip to Minnesota. During the trip back to Minnesota, Grube consumed 12–15 beers and 10–15 ephedrine "pep" pills. Grube was dropped off at his home in Madison, Minnesota, at approximately 2:30 a.m. on October 26.

After he was dropped off, Grube went into the house and placed a brief telephone call to his parents' farm. When the call ended, Grube left the home and drove to Cindy Grube's home in Appleton, Minnesota. After knocking once, he entered the house through an unlocked door, climbed the stairs, and went into Cindy Grube's bedroom, where she was sleeping. Grube woke her and the two talked for a few minutes. Their discussion turned into an argument. The argument ended when Grube manually strangled Cindy Grube to death. Grube put her body in the trunk of his car and drove to his parents' farm, where he placed her body on the dirt floor of an abandoned shed. He then walked to the farmhouse, got into bed with his girlfriend, Tammy Williamson, and went to sleep. When he awoke later that morning, he returned to the shed, moved Cindy Grube's body to a corner of the building, and covered it with cardboard, old tools, sheet metal, and a five-gallon drum.

Law enforcement officials, working on a tip received by the Lac Qui Parle County Attorney, found Cindy Grube's body at 12:40 a.m. on October 27. Suspicion focused on Grube almost immediately because of the body's location and the fact that Cindy Grube had recently obtained a domestic abuse protection order against Grube. Grube was arrested later that morning.

At a pretrial hearing, Grube moved to dismiss that count of the indictment charging him with first-degree murder under Minn. Stat. § 609.185(6), on grounds that the stat-

ute is unconstitutionally vague. The trial court denied that motion. The state moved the court to allow introduction of two domestic abuse Orders for Protection obtained by Cindy Grube against Grube, along with her affidavits and the hearing transcripts supporting those protection orders. The trial court, relying on Minn.R.Evid. 804(b)(5), granted the state's motion.[4]

At trial, the state sought to establish the "past pattern of domestic abuse" required by Minn.Stat. § 609.185(6) through the admission of the protection order affidavits and the hearing transcripts; through the admission of testimony from witnesses who had seen various marks on Cindy Grube's body, which she had attributed to Grube's abuse; and through the admission of testimony from witnesses to whom Grube had admitted abusing Cindy Grube. A summary of each of the witnesses' testimony is listed below:

(1) Elizabeth Ann Ruth, an acquaintance of Cindy Grube's since 1991, testified she saw red marks on Cindy Grube's neck, upper arm, and leg below her knee during the winter of 1991, and that Cindy Grube told her Grube had pushed her against a wall by her neck and kicked her while she was on the floor, causing the injuries. Ruth also testified she saw a bruise on Cindy Grube's leg, near her calf, in the spring of 1992, and was told by Cindy Grube that Grube had caused it.

(2) Madison, Minnesota Police Officer Gene Sandau testified he saw bruises below the knee on each of Cindy Grube's legs on January 1, 1992, and that Cindy Grube told him Grube had kicked her on December 28, 1991, causing the injuries.

(3) Connie Hiepler, a former co-worker of Cindy Grube's at Sunne's Department Store, testified she saw that Cindy Grube's foot was swollen on January 1 or 2, 1992, and that Cindy Grube told her Grube

4. Minn.R.Evid. 804(b)(5) states in relevant part:
   (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
   \* \* \* \* \* \*
   (5) Other Exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court de-

   termines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

pushed her, causing the foot injury. Hiepler also testified she recalled seeing two bruises on the sides of Cindy Grube's wrist on a date she could not remember, and that Cindy Grube told her Grube had grabbed her, causing the injuries. In addition, Hiepler also testified she saw a large bruise on Cindy Grube's right buttock on a date she could not remember, and that Cindy Grube either told her Grube had pushed her or kicked her into something.

(4) Susan Leann Stone, a co-worker at the Prairie Correctional Facility, testified she saw: bruises on Cindy Grube's biceps in the winter of 1992, and that Cindy Grube told her Grube had grabbed her arm; blackish, bluish marks on Cindy Grube's neck during the winter of 1992, and that Cindy Grube told her Grube had grabbed her by her neck, pushed her against the wall, and picked her up off the ground, causing the marks; bruises on both sides of Cindy Grube's jaw in the spring of 1993, and that Cindy Grube told her Grube had grabbed her jaw with one hand, the thumb on one side of the mouth and the fingers on the other side; and a lump the size of an egg on the back of Cindy Grube's head in June 1993, and that Cindy Grube told her Grube had dropped her on her head.

(5) Laureen Dvorak, a family friend of the Grube's, testified she saw a bruise on Cindy Grube's right bicep in the spring of 1993, and that Cindy Grube told her Grube had grabbed her by the arm.

(6) Lisa Judovsky, a co-worker at the Prairie Correctional Facility, testified she saw: a bump on the back of Cindy Grube's head during June 1993, but she could not remember if Cindy Grube explained how she received the injury;[5] bruises on Cindy Grube's legs during June or July 1993, and that Cindy Grube told her Grube had caused the bruises; a gash on Cindy Grube's hairline in August 1993, and that Cindy Grube told her Grube picked her up and threw her on the floor, causing her to hit her head on a table.

(7) Chris Olson, Cindy Grube's roommate during September and October, 1993, testified he saw a gash on the left side of her head, near her hairline, in mid-July, 1993, and that she later told him Grube had knocked her down, causing the injury.

(8) Judy Thielke, whose daughter sometimes babysat for Cindy Grube, testified she saw a gash along Cindy Grube's hairline in August 1993, and that Cindy Grube told her Grube had dropped her on a table, causing the wound.

(9) Linda Young, who babysat for Cindy Grube, testified she saw a gash toward the side of Cindy Grube's head, near the hairline in August 1993, and that Cindy Grube told her Grube grabbed her by the throat and threw her, causing her to hit her head on a wall.

(10) Brian Schneider, a co-worker at the Prairie Correctional Facility, testified he saw a lump, with a small cut in the middle of the lump, on the left side of Cindy Grube's scalp, under the hairline, in August 1993, and that she told him Grube had picked her up and dropped her, causing her to hit her head on the table.

(11) Jay Oellien, a Madison, Minnesota police officer, testified he saw an inch-long wound toward the top of Cindy Grube's head on August 4, 1993, while he was taking a statement from her for the purpose of obtaining a restraining order, and that Cindy Grube told him that Grube had grabbed her around the neck—choking her, and repeatedly slammed the back of her head into a wall, and then slammed her to the kitchen floor.

(12) Linda Vonderharr, a co-worker at the Prairie Correctional Facility, testified Grube admitted to her, in August 1993, that he had pushed Cindy Grube after she had slapped him, causing her to bump her head.

(13) Scott Lagred, Grube's roommate, testified Grube once admitted, on a date Lagred could not remember, that he hit and threw Cindy Grube down.

---

**5.** The trial court admitted the testimony over objection because it was corroborated by Susan Leann Stone's testimony.

In addition to those witnesses, Carla Hodge, Cindy Grube's sister, was allowed to testify regarding acts of physical abuse by Grube that she witnessed in Alabama during 1988. Because these alleged acts occurred in Alabama, the trial court concluded they did not violate Minnesota law and therefore could not be used to establish the past pattern of domestic abuse required for conviction under Minn.Stat. § 609.185(6).[6] They were admitted only as evidence of the Grube's relationship. The trial court instructed the jury eight times during Hodge's testimony not to consider any of the acts she testified to in determining whether there was a past pattern of domestic abuse. The trial court gave the same instruction during the state's cross-examination of Grube and at the close of trial.

In his testimony, Grube admitted to: (1) choking Cindy Grube and pushing her against a wall during the winter of 1991; (2) choking Cindy Grube on January 1, 1992; (3) hitting Cindy Grube on the buttock and choking her, causing a bruise on her buttock; (4) choking her in self-defense on July 24, 1993, and then pushing her, causing her to cut her head; (5) grabbing Cindy Grube by the jaw in August 1993, causing a bruise; and (6) telling Scott Lagred he had hit Cindy Grube.

■■■■ Grube argues that the trial court's admission of the protection order affidavits and transcripts violated his rights under the Confrontation Clauses of the United States and Minnesota Constitutions. In response, the state, relying on *State v. Sorenson*, 441 N.W.2d 455 (Minn.1989), urges us to ignore this issue because Grube waived the issue at trial. We will not decide issues that are raised for the first time on appeal or have not first been addressed by the trial court. *Id.* at 457. However, our review of the record here satisfies us that the issue was not waived at trial and is properly before us. In addition, the state asserts that the challenged statements meet constitutional muster because they are sufficiently trustworthy. We agree.

■■■ In *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the United States Supreme Court determined that out of court statements that are presumptively barred by the hearsay rule and by the Confrontation Clause may nonetheless be admitted at trial where the declarant is unavailable to testify and when the statements bear "adequate 'indicia of reliability.'" *Id.* at 815, 110 S.Ct. at 3146. Under *Wright*, a statement bears adequate indicia of reliability if it falls within a firmly-rooted hearsay exception or is supported by particularized guarantees of trustworthiness. *Id.* at 816, 110 S.Ct. at 3147. In determining whether particularized guarantees of trustworthiness exist, the Court examined "the totality of the circumstances," and noted that "the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 819, 110 S.Ct. at 3148; *see also State v. Lanam*, 459 N.W.2d 656, 661 (Minn.1990) ("[T]he focus is not on all the circumstances, including evidence at trial corroborating the child's statements, but only on those circumstances actually surrounding the making of the statements."). We have previously recognized three factors as relevant to determining the trustworthiness of hearsay statements: (1) whether the context of the statements and the persons to whom they were made suggest that they were reliable; (2) whether the declarant had a motive for lying or problems with memory; and (3) whether the declarant had personal knowledge of the identity and role of the participants in the crime. *State v. Roby*, 463 N.W.2d 506, 509 (Minn.1990).

Our analysis leads us to conclude that the statements challenged by Grube contain sufficient indicia of reliability to withstand his constitutional challenge under both the federal and state constitutions. First, there is no question that Cindy Grube was unavailable as a witness at the trial. Minn.R.Evid. 804(a)(4). Second, while the challenged

---

6. The Act has since been amended to include acts of domestic abuse that occur outside of Minnesota. Act of August 1, 1994, ch. 636, art. 2, § 19, 1994 Minn.Laws 2199–2232.

statements do not fall within a firmly-rooted exception to the hearsay rule,[7] the statements bear adequate indicia of reliability in that the totality of the circumstances provide particularized guarantees of their trustworthiness. The circumstances surrounding the making of the statements also render Cindy Grube particularly worthy of belief.

The statements were based on Cindy Grube's personal knowledge and were made under oath. At the time the statements in the affidavits were made, she had no reason to believe she would not be cross-examined regarding them. She also knew she would be subject to questioning from the judge regarding both the affidavits and her testimony. There is no suggestion in the record that Cindy Grube incompletely or inaccurately recalled any of the facts contained in her statements. Further, there is no suggestion in the record that she suffered from any mental disability at the time the events occurred or at the time she made the statements. In each case she gave the statements relatively soon after the events occurred.[8] Finally, we note that some of the statements were corroborated at trial by Grube's own testimony.[9] When we balance these facts against the possibility that Cindy Grube may have had a motive to fabricate or exaggerate the abuse,[10] we conclude that the challenged statements are supported by sufficient particularized guarantees of trustworthiness to satisfy the Confrontation Clauses of both the United States and Minnesota Constitutions.

■ Grube's next argument is that Minn. Stat. § 609.185(6) is unconstitutionally vague. This argument is based on the contention that it is impossible for an ordinary person to understand what conduct is prohibited by the statute because the term "pattern" in the phrase "past pattern of domestic abuse" is not defined. He further argues that because Minn.Stat. § 609.185 "requires that * * * [domestic] abuse * * * be 'interrelated,' * * * the phrase 'domestic abuse' itself connotes a 'pattern' of activity." Put another way, Grube argues that because domestic abuse, by itself, must comprise a pattern of related activity, the statute ultimately requires a "pattern of patterned activity." These arguments have no merit.

■ " '[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' " *Posters 'N' Things, Ltd. v. United States,* —— U.S. ——, ——, 114 S.Ct. 1747, 1754, 128 L.Ed.2d 539 (1994) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). However, when a statute clearly applies to a person's conduct, that person may not successfully challenge the statute for vagueness. *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561–62, 41 L.Ed.2d 439 (1974); *State v. Christie,* 506 N.W.2d 293, 301 (Minn.1993). *See also Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

Grube's void-for-vagueness argument fails for two very simple reasons. First, his read-

---

7. *See Wright,* 497 U.S. at 811–12, 815, 110 S.Ct. at 3144, 3146 (holding that Idaho Rule of Evidence 803(24) is not a firmly rooted hearsay exception for Confrontation Clause purposes); *State v. Larson,* 472 N.W.2d 120, 125 (Minn. 1991) (noting that residual hearsay exceptions are not firmly rooted for Confrontation Clause purposes).

8. Cindy Grube composed the first affidavit, dated January 2, 1992, one day after the alleged abuse, and testified for the first time on January 8, 1992, 7 days after the alleged abuse. She composed the second affidavit, dated August 4, 1993, 11 days after the alleged abuse, and testified for the second time on August 9, 1993, 16 days after the alleged abuse. Her allegation in the first affidavit—that Grube choked her on January 1—

is further corroborated by the testimony of Tracy Police Officer Gene Sandau, who testified that when he responded to her domestic abuse call on January 1, she complained that Grube had choked her.

9. While Grube's corroboration is not a circumstance surrounding Cindy Grube's making of the challenged statements, we believe his corroboration makes the statements particularly worthy of belief.

10. Grube argued Cindy Grube was planning to move, with Kacie, from Minnesota, and that her knowledge that a custody battle would ensue provided her with a motive to fabricate or exaggerate the abuse.

ing of the statute as requiring "a pattern of patterned activity" is simply wrong. The statute, while not defining the term "pattern," states that "[f]or purposes of clause (6), "domestic abuse" means *an act* ...." Minn.Stat. § 609.185 (1992) (emphasis added). A lone act, under any reasonable definition of the word "pattern," does not and cannot constitute a pattern. Thus, the phrase "pattern of domestic abuse" cannot be read to require a "pattern of patterned activity."

The second reason Grube's void-for-vagueness argument fails is that the evidence presented at trial, which included Grube's own admissions that he had choked Cindy Grube on four separate occasions prior to choking her to death, establishes that Grube engaged in a pattern of domestic abuse under any reasonable definition of the word pattern, including the one he invites this court to adopt.[11] Ordinary people would have no trouble understanding that Grube's conduct clearly was prohibited by Minn.Stat. § 609.185(6). Because Grube engaged in conduct proscribed by Minn.Stat. § 609.185(6), he cannot challenge the statute's constitutionality on vagueness grounds.

 Grube's final argument is that the evidence produced at trial is insufficient to sustain his conviction under Minn.Stat. § 609.185(6), because the state presented no evidence of a pattern of domestic abuse. When considering the sufficiency of the evidence, this court must view the evidence in the record in the light most favorable to the jury's verdict and must assume the jury believed the state's witnesses and disbelieved contrary evidence. *State v. Braylock*, 501 N.W.2d 625, 628 (Minn.1993). We review that evidence and its legitimate inferences to determine if it was sufficient to permit the jury, giving due regard to the need to overcome the presumption of innocence by proof beyond a reasonable doubt, to conclude that the defendant was guilty of the offense charged. *State v. Moore*, 481 N.W.2d 355, 360 (Minn.1992). When viewed in that light, the evidence of Grube's guilt is overwhelming. By his own testimony, Grube admits to choking Cindy Grube on four separate occasions between winter 1991 and fall 1993, in addition to choking her to death in October 1993. Further, 13 witnesses testified as to their knowledge of Grube's abuse of Cindy Grube. That testimony indicates that Grube physically assaulted Cindy Grube on at least 9 different occasions. Thus, the evidence produced at trial is sufficient to sustain Grube's conviction under Minn.Stat. § 609.185(6).

Except as otherwise discussed, we have considered Grube's *pro se* arguments and found them lacking in merit.

Affirmed.

---

**11.** Grube proposes that we adopt the definition of pattern found at 18 U.S.C. § 3575(e), which the Supreme Court approvingly footnoted in *Sedima v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985): " '[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " Because we conclude that Grube's conduct constituted a pattern under any reasonable definition of the term, we need not and therefore do not adopt a definition of the term pattern in this case.