STATE of Minnesota, Respondent,

v.

David Lee CROSS, Appellant.

No. C6–97–254.

Supreme Court of Minnesota.

April 23, 1998.

---

2. The court cited a Minnesota Supreme Court order: Order, C4–96–2073, Finance and Commerce 22 (October 18, 1996).

John M. Stuart, State Public Defender, by Susan J. Andrews, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Attorney General, St. Paul, Michael O. Freeman, Hennepin County Attorney, by Gayle C. Hendley, Asst. County Attorney, Minneapolis, for respondent.

## OPINION

GARDEBRING, Justice.

David Lee Cross appeals from a conviction for murder in the death of his girlfriend Heidi Rae Haines on June 28, 1996 in Minneapolis, Minnesota. Cross was convicted of first-degree domestic abuse homicide in violation of Minn.Stat. § 609.185(6) (1996) and second-degree intentional homicide in violation of Minn.Stat. § 609.19, subd. 1(1) (1996) after a jury trial in Hennepin County in December 1996. On appeal from his conviction, Cross raises two issues: (1) whether the trial court erroneously admitted the evidence of prior incidents of domestic violence, and (2) whether the trial court erred· by not instructing the jury that it must find each individual incident of prior domestic violence, offered as evidence of a "past pattern of domestic abuse," was proven beyond a reasonable doubt.[1] We affirm.

Shortly before midnight on June 28, 1996, two witnesses drove by a car in which Cross and Haines were seated. The car was pulled over to the side of the road. The witnesses observed Cross vigorously slapping Haines, who was seated in the driver's seat. Concerned by what they had seen, the witnesses drove past a second time, and saw Cross standing outside the car, leaning into the driver's window while his arms and upper body moved back and forth in a jerking motion. The witnesses stopped and called 911. When the police arrived, Haines was outside the car and bystanders were attempting to administer CPR to her. She was taken to Hennepin County Medical Center, where she was pronounced dead. The medical examiner determined that manual strangulation was the cause of death, and Cross was charged in Haines' death.

Minnesota's domestic abuse homicide statute punishes as first-degree murder conduct that

causes the death of a human being while committing domestic abuse, when the perpetrator has engaged in a past pattern of domestic abuse upon the victim and the death occurs under circumstances manifesting an extreme indifference to human life.

Minn.Stat. § 609.185(6). The statute defines the term "domestic abuse" as an act that "constitutes a violation of section 609.221, 609.222, 609.223, 609.224, 609.2242, 609.342, 609.343, 609.344, 609.345, [or] 609.713." *Id.* Sections 609.221–2242 prohibit assault in the first, second, third, and fifth degree, and domestic assault. Sections 609.342–.345 prohibit criminal sexual conduct in the first, second, third, and fourth degree. Section 609.713 prohibits terroristic threats. The domestic abuse homicide statute further specifies that the acts of domestic abuse must be "committed against the victim who is a family or household member as defined in section 518B.01, subdivision 2, paragraph (b)." *Id.* Section 518B.01, · the Domestic Abuse Act, defines "family or household members" as

(1) spouses and former spouses;

(2) parents and children;

(3) persons related by blood;

(4) persons who are presently residing together or who have resided together in the past;

(5) persons who have a child in common regardless of whether they have been married or have lived together at any time;

(6) a man and woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time; and

(7) persons involved in a significant romantic or sexual relationship.

Minn.Stat. § 518B.01, subd. 2(b) (1996).

We have reviewed the domestic abuse homicide statute on three prior occasions: in

---

1. The record below reflects no objection by defendant to either the evidence offered or the jury instruction given. It is well settled that a party generally may not raise issues for the first time on appeal. *In re Welfare of K.T.*, 327 N.W.2d 13, 16–17 (Minn.1982). The Minnesota Rules of Criminal Procedure admit an exception in criminal cases, however, allowing an appellant to raise issues on appeal which were not objected to during trial, if the error constitutes "plain errors or defects affecting substantial rights." Minn. R.Crim. P. 31.02. Although we find no error on either issue, we consider them here in order to give guidance to courts below in resolving similar issues in the future.

*State v. Auchampach,* 540 N.W.2d 808 (Minn. 1995); *State v. Robinson,* 539 N.W.2d 231 (Minn.1995); and *State v. Grube,* 531 N.W.2d 484 (Minn.1995). Our prior cases have held that section 609.185(6) is not unconstitutionally vague. Further, we have declined to define "pattern" more restrictively than the words of the statute. *See Auchampach,* 540 N.W.2d at 819; *Robinson,* 539 N.W.2d at 238.

## I. Evidence of Prior Domestic Abuse

■ We begin with the question of whether the trial court erred by admitting evidence of prior domestic abuse without first requiring the state to demonstrate to the court the occurrence of each instance by "clear and convincing evidence."

Evidence at trial showed that Cross met Haines in December 1995, and they became romantically involved. By January of 1996, they were living together in the apartment of their mutual friend Letitia (Tanya) Whitehead and her children. Their relationship, however, was troubled. The state offered the following evidence to show that Cross had engaged in a past pattern of domestic abuse against Haines:

(1) Whitehead testified that she saw bruises on Haines' upper chest and body in February 1996. When she asked the victim about the source of the bruises, Haines responded that Cross had caused them.

(2) Both Whitehead and Kristine Haines, the victim's sister, testified that they were present in March 1996 during an argument between Cross and Haines, in which Cross, without provocation, punched Haines in the nose with a closed fist and gave her a bloody nose.

(3) Kristine Haines testified that, on another occasion, she overheard Cross threaten to beat Haines because Kristine and the victim were late picking him up after work.

(4) Kristine Haines, who worked with her sister several days a week at Camp Snoopy, also testified that the victim came to work with a black eye "everyday" during the summer of 1996.

(5) Whitehead testified that throughout March, April and May of 1996, she over- heard arguing between Haines and Cross through the walls of the apartment where all three lived. The arguments were accompanied by noises that sounded like someone being slammed against the wall or somebody hitting the wall. Whitehead stated that on these occasions she could hear Haines screaming, "Stop."

(6) According to Kristine Haines' testimony, when she expressed concern about her sister's bruises and black eyes and urged her to call the police, Haines responded that "she didn't want to get [Cross] in trouble."

(7) The medical examiner testified that Haines exhibited numerous bruises and abrasions, some of them quite recent and others healing, and therefore older. She testified that some of the injuries were of the type that are usually inflicted, rather than received accidentally.

(8) Cross admitted to police, under questioning, that he and Haines had fought earlier on the evening of her death, at which time he had throttled Haines "a little bit."

On appeal, Cross argues that the admissibility of such evidence should be governed by Minn. R. Evid. 404(b), which states that:

[e]vidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In a criminal prosecution, such evidence shall not be admitted unless the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence.

Based on this rule of evidence, Cross asserts that evidence of prior acts of domestic violence should only be admitted subject to the safeguards established by this court for admission of "other crimes" evidence in *State v. Billstrom,* 276 Minn. 174, 178–79, 149 N.W.2d 281, 284–85 (1967). *Billstrom* requires that a defendant's participation in other crimes must be proven by clear and convincing evidence. *Id.* at 179, 149 N.W.2d at

285. Further, we have said that admission of "other crimes" evidence requires a prior determination by the trial court that the evidence is indeed clear and convincing. *State v. Matteson,* 287 N.W.2d 408, 411 (Minn. 1979). Cross argues that the trial court erred by not subjecting the evidence of past domestic violence to judicial scrutiny before it was presented to the jury. He argues that the trial court should have scrutinized the evidence to determine whether that the prior misconduct could be established by the state by clear and convincing evidence. We disagree because in this case the evidence offered by the state on the previous acts of domestic abuse was simply not "other crimes" evidence, within the meaning of Rule 404(b).

■ The general rule is that evidence of prior "bad acts" or "other crimes" by the defendant in a criminal case is not admissible unless it is offered under one of the recognized exceptions to this rule of inadmissibility. *State v. Spreigl,* 272 Minn. 488, 490, 139 N.W.2d 167, 169 (1965). "Those exceptions generally require similarity between the current and the past act as to defendant's motive, opportunity, intent, preparation, plan, knowledge, or identity." *State v. Gorman,* 546 N.W.2d 5, 9 (Minn.1996).

■ The purpose underlying the heightened evidentiary standard required for "prior acts" or "other crimes" evidence is to prevent the jury from convicting a defendant for being a "bad person" or for having a propensity to commit crimes, even where the evidence is insufficient to convict for the crime charged. *State v. Bolte,* 530 N.W.2d 191, 196 (Minn.1995). In the present case, however, the prior acts were not offered for any of the purposes listed in Rule 404(b), such as to show motive, identity, or absence of mistake. Rather, they were offered as direct evidence, going to prove an element of the offense with which Cross was charged, namely, that he had engaged in a "past pattern of domestic abuse." Minn.Stat. § 609.185(6).

■ Since proof of prior incidents of domestic abuse is necessary to establish an element of the crime charged, we believe that the state must be allowed to offer relevant evidence. We hold today that evidence of other criminal acts that is directly probative of a past pattern of domestic abuse, under Minn.Stat. § 609.185(6), is not "other crimes" evidence, for Rule 404(b) purposes. *See United States v. DeLuna,* 763 F.2d 897, 913 (8th Cir.1985) (stating that "[e]vidence which is probative of the crime charged, and not solely uncharged crimes, is not 'other crimes' evidence.").

That is not to say that Rule 404(b) is entirely inapplicable in a prosecution for domestic abuse homicide. A determination as to whether Rule 404(b) governs turns on the use to which the evidence is to be put. If, for example, the state wished to introduce evidence of a prior domestic assault by the same defendant against a different victim, Rule 404(b) would govern. In that instance, the state might offer the evidence for the purpose of showing, for example, that the defendant's acts against the victim were not an accident, or to refute evidence of self-defense. However, that was not the purpose for which the incidents of prior domestic abuse were introduced in Cross' trial. Here, the prior bad acts were, themselves, proof of an element of the offense that the state was required to prove beyond a reasonable doubt.

■ The state, already bearing the heavy burden of proving the offense beyond a reasonable doubt, should not be further hampered from proving its case. We have previously stated, in discussing the admissibility of "other crimes" evidence, that "[t]he state may prove all relevant facts and circumstances which tend to establish any of the elements of the offense with which the accused is charged, even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes." *State v. Drews,* 274 Minn. 426, 430, 144 N.W.2d 251, 254–55 (1966). Further, this court has recently stated that "it is important that the evidence presented at trial to demonstrate a past pattern of domestic abuse must meet appropriate admissibility requirements including relevancy and the rules with respect to hearsay." *Auchampach,* 540 N.W.2d at 819 n. 10. Assuming that it meets these admissibility requirements, evidence of prior domestic abuse is admissible in a trial

for domestic abuse homicide if it is relevant to establishing the past pattern of abuse, and its probative value is not "substantially outweighed" by the danger of unfair prejudice.[2] *See* Minn. R. Evid. 401, 403.

## II. Pattern of Domestic Abuse

■ Cross also assigns as error the trial court's failure to instruct the jury that each incident offered to prove the "past pattern of domestic abuse" must itself be proven beyond a reasonable doubt. At the close of trial, the trial court gave the jury the following instruction on the elements of the offense of domestic abuse homicide:

> The elements of murder in the first degree are: First the death of Heidi Rae Haines must be proven; Second the death of Heidi Rae Haines occurred while Defendant was committing domestic abuse as I have just defined it to you; Third Defendant engaged in a past pattern of domestic abuse upon Heidi Rae Haines; Fourth the death of Heidi Rae Haines occurred under circumstances which manifested an extreme indifference to human life; Fifth Defendant's acts took place on June 28, 1996, in Hennepin County. If you find that each of these five elements has been proven beyond a reasonable doubt Defendant is guilty of murder in the first degree. If you find that any of these elements has not been so proven Defendant is not guilty.

In defining "domestic abuse," the court charged the jury that:

> Domestic abuse is defined as committing any of the following offenses against a family or household member. Family or household members are persons who are presently residing together or have resided together in the past or persons involved in a significant romantic or sexual relationship.

The judge then instructed the jury as to the elements of each of the offenses of domestic abuse on which the state had offered evidence: first degree assault, third degree assault, and fifth degree assault, within the meaning of Minn.Stat. §§ 609.221–2242; and terroristic threats, within the meaning of Minn.Stat. § 609.713. No instruction was given, or requested, on "past pattern of domestic abuse."

■ A defendant's failure to propose specific jury instructions or to object to instructions before they are given to the jury generally constitutes a waiver of the right to appeal. *State v. LaForge*, 347 N.W.2d 247, 251 (Minn.1984). Nevertheless, a failure to object will not cause an appeal to fail if the instructions contain plain error affecting substantial rights or an error of fundamental law. *State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983). Therefore, we review Cross' claims for plain errors affecting substantial rights or errors in fundamental law.

■ On appellate review, it is well settled that the court's charge to the jury must be read as a whole, and if, when that is done, it correctly states the law in language that can be understood by the jury there is no reversible error. *State v. Anderson*, 261 Minn. 431, 435, 113 N.W.2d 4, 7 (1962).

Due process requires that every element of the offense charged must be proven beyond a reasonable doubt by the prosecution. *Auchampach*, 540 N.W.2d at 816. Cross claims that the court committed an error in fundamental law by not instructing the jury that, in order to find that the state had proven a past pattern of domestic abuse beyond a reasonable doubt, the jury must conclude, beyond a reasonable doubt, that Cross committed each of the acts offered as proof of the "pattern." In essence, Cross asserts that each underlying act offered as evidence of the "past pattern of domestic abuse" is itself a separate element of the crime of domestic abuse homicide, requiring proof beyond a reasonable doubt.

■ Put simply, Cross ignores the plain language of the statute, which requires proof only that the murder occurred during an act of domestic abuse, that the perpetrator has engaged in a past pattern of domestic abuse, and that the circumstances of the killing

---

2. We note that the legislature has expressed an intent to remove evidence of "similar prior conduct" in domestic abuse (non-homicide) prosecutions from the "clear and convincing" standard of Rule 404(b). *See* Minn.Stat. § 634.20 (1996).

If this section is relevant to the admissibility of evidence in domestic abuse crimes not resulting in death of the victim, it would follow that a heightened standard would not apply to domestic abuse homicide cases.

manifest an extreme indifference to human life. *See* Minn.Stat. § 609.185(6). The statute does not require proof of a pattern of domestic abuse *convictions,* or specify a minimum number of incidents which must be proven in order to find a "pattern," or specify that proof beyond a reasonable doubt is required as to the underlying acts.

In our view, the statute reflects a recognition of the unique characteristics of domestic abuse. In addition to the hidden nature of domestic violence, much of which occurs in the privacy of the home, with only the perpetrator and victim as witnesses, domestic abuse offenses are also among the most underreported crimes in America. Joseph Biden, The Violence Against Women Act of 1991, S.Rep. No. 102–197, at 38 (1991). "For a host of reasons—including fear of retaliation and the lingering stigma of * * * violence in the home—vast numbers of these crimes are left unreported to police or other authorities. Both literally and figuratively, these crimes remain hidden from public view." *Id.* In drafting the domestic abuse homicide statute, the legislature apparently recognized the unusual proof problems inherent in prosecution of this type of crime. In the absence of clear statutory direction, requiring proof beyond a reasonable doubt as to each of the acts constituting the "past pattern of domestic abuse" would, in our view, create an unnecessarily heavy burden on the state. It is legally sufficient for the state to prove beyond a reasonable doubt all

elements of the domestic abuse homicide statute, including that defendant engaged in a "past pattern of domestic abuse."

Here, we conclude that the jury instructions requiring the state to prove beyond a reasonable doubt that the defendant had engaged in a "past pattern of domestic abuse" adequately set forth the law governing the domestic abuse homicide charge against Cross.[3]

In the absence of any error, we affirm the convictions.

Affirmed.

---

3. Without attempting to limit the role of trial courts in the crafting of jury instructions, we note that our understanding of the term "pattern" may be informed by the use of the word in other contexts. One year after we decided *Robinson,* we defined a pattern for the purpose of Minnesota's career offender statute as "the organizing principle or relationship binding certain things, in this case incidents of criminal conduct, together." *Gorman,* 546 N.W.2d at 9. Similarly, in construing the federal RICO statute, the U.S. Supreme Court stated that "[i]t is not the number of predicate[ offenses] but the relationship that they bear to each other or to some external organizing principle that renders them 'ordered' or arranged.'" *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). Based on these cases, it is clear that a "pattern" must involve some number of events which bear sufficient relationship to establish a similarity or principle around which they are organized. Thus, in *Robinson,* we said:

the "pattern" of activity which is an element of domestic abuse murder is carefully limited to a small number of criminal acts and a narrow group of victims. The central "organizing principle" is the existence of a domestic relationship itself and the "distinguishing characteristics" are the involvement of the same participants—victim and perpetrator—and the same types of crimes. Other types of crimes committed against the family or household member, *e.g.,* theft, may not be included within the pattern, and assaults otherwise within the definition of "domestic abuse" are excluded if committed against an unrelated person.

*Robinson,* 539 N.W.2d at 238. Further, because the statute provides no time frame within which the predicate acts must have been committed, we decline to add a further time boundary, noting only that the events must be sufficiently proximate in time to constitute a "pattern."