**STATE of Minnesota, Respondent,**

v.

**Ryan Adam JOHNSON, Appellant.**

**No. A08–1199.**

Supreme Court of Minnesota.

Oct. 8, 2009.

Lori Swanson, Attorney General, Peter R. Marker, Assistant Attorney General, St. Paul, Minnesota; and Jeffrey R. Edblad, Isanti County Attorney, Cambridge, Minnesota, for respondent.

Jessica Merz Godes, Assistant State Public Defender, St. Paul, Minnesota, for appellant.

## OPINION

MAGNUSON, Chief Justice.

Appellant, Ryan Adam Johnson, was convicted of first-degree murder while committing child abuse, Minn.Stat. § 609.185(a)(5) (2008), first-degree murder while committing domestic abuse, Minn. Stat. § 609.185(a)(6), and second-degree intentional murder, Minn.Stat. § 609.19 (2008), for the death of his infant child, Jonah Johnson. Johnson argues that there was insufficient evidence to prove a past pattern of child and domestic abuse, and that the district court erred in convicting him for three counts of murder for the same incident. We hold that there is sufficient evidence to support his convictions and affirm in part, but we reverse in part and vacate two of his three murder convictions.

Johnson and his girlfriend, T.O., were the parents of 6–week–old Jonah. At around 3 p.m. on September 4, 2006, T.O. went to work. Because Johnson and T.O. lived in a house with other members of T.O.'s family, Johnson rarely cared for Jonah, usually leaving Jonah in the care of T.O.'s family. On this day, however, Johnson was the primary caregiver. Before leaving for work, T.O. put Jonah down for a nap. According to Johnson's statement to police, shortly after T.O. left, Johnson noticed that Jonah was fussing and gave him a pacifier. Johnson then went outside to smoke a cigarette.

Johnson gave a voluntary videotaped statement to the police in which he recounted the events that took place after he returned from his smoking break. Johnson said that he went to check on Jonah and noticed that he was taking deep breaths. Johnson picked up Jonah and tried to regulate his breathing by gently shaking him, placing him on his stomach, and patting him on the back. When none of those techniques worked, Johnson threw Jonah up in the air towards the ceiling. When he came down, Jonah hit his head on the air conditioning unit. Johnson caught Jonah and then threw him across the

room. Jonah hit the leg of his bassinette. Johnson stated that he performed CPR on Jonah but his attempts were unsuccessful.

Johnson did not call 911. Rather, at around 4 p.m., he went downstairs and asked T.O.'s brother if he could use the phone. T.O.'s brother noticed that Johnson was very pale and had a dazed look in his eyes, but did not ask any questions and gave him permission to make the phone call. Johnson used the phone to call his mother, and he asked her to call T.O. at work and have T.O. call him. When T.O. called Johnson, Johnson told her that "[Jonah] was gone" and that Jonah ha[d]n't "been breathing for 40 minutes." When the conversation ended, T.O. called 911.

The police arrived at T.O.'s home. The officers noticed bruising on Jonah's head, a discharge of a "brown and red color" from Jonah's nose, and blood in Jonah's mouth. The police attempted CPR on Jonah, but were unable to revive him. An ambulance took Jonah to the hospital, where a doctor pronounced him dead from the injury to his head.

During an autopsy, the medical examiner discovered acute fractures in three of Jonah's ribs on his right side. The fractures were healing, which indicated that the injury had taken place at least two weeks prior to Jonah's death. The medical examiner noted that the cause of death was not the rib fractures, but multiple blunt force injuries.

During his videotaped interview, the police asked Johnson about Jonah's rib injuries. Johnson was not surprised that Jonah's ribs were broken. He stated that around 2 weeks prior he "sat on" Jonah. Jonah had been fussing and crying, and Johnson stated that he "went over the edge" in trying to quiet him.

The police also questioned Johnson about his past interactions with Jonah. The police asked if "there were other times that you were frustrated that you might have grabbed him or squeezed him or done something else?" Johnson responded, "Yeah, not really tight." Johnson said that when Jonah would not take his bottle he would "squeeze a little bit more." Johnson admitted that he knew it "wasn't the right course of action to take" but that he did it anyway. He also testified that, at the time of the squeezing, Jonah would "cry" and was "uncomfortable." Later in the interview, Johnson again admitted to squeezing Jonah "previous times." The police investigator asked Johnson if he squeezed Jonah "pretty hard" and Johnson responded "Yeah." Still later, Johnson admitted that he squeezed Jonah "earlier times" and "a few times." Johnson's demonstration of how he squeezed Jonah, recorded on the videotape, showed him holding a stuffed animal and strongly jerking the animal with both hands towards his chest.

A grand jury indicted Johnson on charges of first-degree child abuse murder and first-degree domestic abuse murder. Prosecutors also charged him with second-degree intentional murder. After a bench trial, the district court found Johnson guilty of all three murder charges. The district court found that, by Johnson's own admission, he had squeezed the baby "a few times," "previous times," and "earlier times" which indicated that Johnson has squeezed Jonah more than once. The district court found that the squeezing incidents combined with the sitting incident established a pattern of both child abuse and domestic abuse. The district court then convicted Johnson on all three counts and sentenced him to life imprisonment for the first-degree child abuse murder conviction, but not the other two convictions.

## I.

Johnson's first argument is that the evidence was not sufficient to prove

that he committed first-degree child abuse murder and first-degree domestic abuse murder. "When reviewing a sufficiency of the evidence claim, 'we view the evidence in the light most favorable to the verdict.'" *State v. Holliday*, 745 N.W.2d 556, 562 (Minn.2008) (quoting *State v. Leake*, 699 N.W.2d 312, 319 (Minn.2005)). The verdict should not be disturbed if the fact finder could reasonably conclude, given the presumption of innocence and the requirement of proof beyond a reasonable doubt, that the defendant was guilty of the charged offense. *State v. Crow*, 730 N.W.2d 272, 280 (Minn.2007). Here, Johnson admitted he caused Jonah's death. The question on appeal is whether the district court could properly find, on this record, that Johnson's prior conduct amounted to a pattern of abuse.

The statutory definitions of first-degree child abuse murder and first-degree domestic abuse murder are nearly identical. Minnesota Statutes § 609.185 (2008) defines first-degree murder as an act that causes the death of a human being while committing domestic abuse or child abuse "when the perpetrator has engaged in a past pattern" of domestic abuse or child abuse "and the death occurs under circumstances manifesting an extreme indifference to human life." Because of the similarity in wording between the child abuse and domestic abuse provisions, we interpret the provisions similarly. *See State v. Manley*, 664 N.W.2d 275, 281 (Minn.2003). Johnson argues only that he had not engaged in a past pattern of abuse; he does not dispute that his actions manifested an extreme indifference to human life.

The State has the burden of proving a past pattern of abuse beyond a reasonable doubt. *State v. Sanchez–Diaz*, 683 N.W.2d 824, 832 (Minn.2004). A pattern is "a regular way of acting." *State v. Robinson*, 539 N.W.2d 231, 237 (Minn. 1995). The statute does not require a minimum number of prior incidents to constitute a past pattern. *State v. Cross*, 577 N.W.2d 721, 727 (Minn.1998). However, a lone prior act "does not and cannot constitute a pattern." *State v. Grube*, 531 N.W.2d 484, 491 (Minn.1995). More than one prior act of domestic abuse is required. *Sanchez–Diaz*, 683 N.W.2d at 834. Additionally, acts that are not sufficiently proximate in time do not constitute a pattern. *State v. Clark*, 739 N.W.2d 412, 421 (Minn.2007) (holding that events that occurred 13–15 years before later incidents were not part of a pattern).

Although a lone prior act cannot constitute a pattern, depending on the circumstances, two or more prior acts may be sufficient to establish a pattern. The question we face here is whether the State must prove each of those acts beyond a reasonable doubt.

We have said in the past that the State may prove a pattern beyond a reasonable doubt even if the State does not prove every claimed predicate act of the pattern beyond a reasonable doubt. *E.g., Sanchez–Diaz*, 683 N.W.2d at 832; *Cross*, 577 N.W.2d at 727. In *Cross*, where there was evidence that the defendant had committed many predicate acts, we held that a defendant is not entitled to an instruction that the state must prove each alleged predicate act beyond a reasonable doubt. *Id.* We reached that conclusion because the statute does not require proof of previous domestic abuse convictions or a certain number of prior incidents. *Id.* Therefore, because no one predicate act was an element of the offense, no specific act had to be proven beyond a reasonable doubt. *Id.* Only the existence of a "pattern" had to be proven beyond a reasonable doubt. *Id.* We held that based on the evidence of many prior acts there was evidence be-

yond a reasonable doubt that Cross had engaged in a pattern. *Id.*

We elaborated on this point in *State v. Kelbel*, 648 N.W.2d 690 (Minn.2002), stating that the State need only present sufficient evidence of enough underlying acts to constitute a pattern beyond a reasonable doubt. *Id.* at 699–700. We stated that "if the state presents evidence of underlying acts A, B, C, and D, it is not reversible error for there to be insufficient evidence of D, if A, B, and C are sufficient to establish a pattern of domestic abuse beyond a reasonable doubt." *Id.* We reaffirmed that each underlying act need not be proven beyond a reasonable doubt. *Id.*

Here, the State presented evidence of at least two distinct prior acts of abuse: (1) that Johnson sat on Jonah breaking his ribs; and (2) that Johnson squeezed Jonah inappropriately while feeding him, causing him pain. The State argues that it need not prove each of those acts of misconduct beyond a reasonable doubt in order to prove that Johnson engaged in a pattern of domestic or child abuse. We disagree.

■ In *Cross* and *Kelbel*, we said that the State must present enough evidence to prove that the defendant has engaged in a pattern of conduct beyond a reasonable doubt. But it simply does not follow that the State can prove a pattern beyond a reasonable doubt without proving *any* underlying act beyond a reasonable doubt. *Cross* and *Kelbel* correctly held that, in a case where there are multiple underlying acts in excess of what is necessary to prove a pattern, not all of the underlying acts need to be proven beyond a reasonable doubt. Nonetheless, in order to prove a pattern beyond a reasonable doubt, it is necessary to prove at least a minimum number of underlying acts beyond a reasonable doubt in order to prove a pattern beyond a reasonable doubt.

The first-degree murder statute enumerates various criminal acts constituting domestic or child abuse. Minn.Stat. § 609.185(b), (c). Here, the State claimed Johnson's prior conduct was fifth-degree assault, Minn.Stat. § 609.224 (2008), under the domestic and child abuse murder statutes, or malicious punishment of a child, Minn.Stat. § 609.377 (2008), under the child abuse murder statute.

Johnson argues that the evidence presented by the State does not show that his prior conduct rose to the level of fifth-degree assault or malicious punishment of a child, and, therefore, the State did not prove beyond a reasonable doubt that he engaged in a pattern of child or domestic abuse. Although we agree with Johnson that the State must prove at least two incidents beyond a reasonable doubt, we disagree that the State has not met its burden.

### A.

■ A person is guilty of fifth-degree assault if the person intentionally inflicts bodily harm upon another. Minn.Stat. § 609.224, subd. 1(2). "Intentionally" means that the person "either has a purpose to do the thing or cause the result specified or believes that the act . . ., if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(3) (2008). Bodily harm "means physical pain or injury, illness, or any impairment of physical condition." Minn.Stat. § 609.02, subd. 7. Johnson contends that his squeezing of and sitting on Jonah does not constitute fifth-degree assault.

Johnson argues that the squeezing incidents happened in order to facilitate bottle feeding, and, therefore, the intent was to facilitate feeding and not to inflict bodily harm. But, in his statement to the police, Johnson directly admitted his intent to inflict bodily harm. He stated that, while

feeding Jonah, he realized that the squeezing "wasn't gonna help" but that he did it anyway. Johnson further admitted that he "knew [the squeezing] wasn't the right course of action to take." These admissions satisfy the intent requirement.

■ Next, Johnson contends that, even if he intended to inflict bodily harm, there is insufficient evidence to prove that he actually did inflict bodily harm. Bodily harm is defined as "physical pain or injury." Minn.Stat. § 609.224, subd. 1; Minn. Stat. § 609.02, subd. 7. In response to questioning, Johnson agreed with the police that he squeezed Jonah "pretty hard." Additionally, in his demonstration of squeezing Jonah, Johnson performed a strong, two-handed jerk towards his body in a violent manner totally inconsistent with feeding a baby. He also said the squeezing would make Jonah "cry" and become "uncomfortable."[1] Therefore, there is sufficient evidence for the district court, sitting as the fact finder, to find that Johnson inflicted physical pain on Jonah when squeezing him inappropriately.

■ Johnson also argues that there is insufficient evidence that the "sitting" incident constituted fifth-degree assault because Johnson's intent was to quiet Jonah from fussing and not to inflict bodily harm. But, by Johnson's own admission he "went over the edge" in sitting on Jonah. Furthermore, it has never been a requirement that a defendant's primary intent be to inflict bodily harm. Instead, "[t]he ordinary effect upon others of the acts alleged to constitute the crime may naturally be taken into account to determine intent." *State v. Ott*, 291 Minn. 72,

75, 189 N.W.2d 377, 379 (1971). The ordinary effect of sitting on a baby would be to inflict bodily harm, therefore, there is sufficient evidence to prove that the "sitting" incident constituted fifth-degree assault.

### B.

■ Johnson also argues that the State did not present sufficient evidence to prove that he committed malicious punishment of a child in violation of Minn.Stat. § 609.377. A person is guilty of malicious punishment of a child if, as a parent, the person engages in an intentional act constituting "unreasonable force or cruel discipline that is excessive under the circumstances." Minn.Stat. § 609.377, subd. 1. During the squeezing incidents, by Johnson's own admission, he squeezed Jonah "pretty hard." He demonstrated a two-handed jerking motion of strong force. Furthermore, Johnson directly admitted that his force was excessive under the circumstances because he knew the squeezing "wasn't gonna help" and "wasn't the right course of action to take" but that he did it anyway. As a result, the evidence was sufficient for the district court rationally to find that Johnson's squeezing conduct amounted to malicious punishment of a child.

■ Johnson also contends that the "sitting" incident does not amount to malicious punishment of a child. The district court could reasonably have found that sitting on a baby and breaking three ribs in response to the baby fussing is unreasonable force under the circumstances. We hold that the State presented sufficient evidence to prove beyond a reasonable

---

1. At oral argument, Johnson's counsel argued that Jonah was crying and uncomfortable from a digestive system disorder rather than from the squeezing. But we consider the evidence in the light most favorable to the verdict. *Bernhardt v. State*, 684 N.W.2d 465, 476 (Minn.2004). Here, Johnson testified that he squeezed Jonah hard and that he "knew it wasn't the right course of action to take." As a result, the district court could reasonably find that Jonah cried because of the squeezing.

doubt that Johnson committed malicious punishment of a child.

█ Because the State proved beyond a reasonable doubt that Johnson committed fifth-degree assault and malicious punishment of a child, we now must determine if the State proved that Johnson engaged in a pattern of conduct. We conclude that it has. Johnson admitted to squeezing Jonah "a few times," "previous times," and "earlier times." He also admitted to sitting on Jonah. As we have previously discussed, each of those underlying acts has been proven by the State beyond a reasonable doubt. Given that these incidents of abuse occurred within Jonah's short 44–day life, and given that Johnson rarely cared for Jonah, the district court properly found that Johnson's "regular way of acting" towards Jonah was abuse. *See Robinson,* 539 N.W.2d at 237. As a result, the State has proven beyond a reasonable doubt sufficient underlying acts to prove that Johnson engaged in first-degree child abuse murder and first-degree domestic abuse murder.

## II.

█ Johnson asserts that the district court erred in convicting him on both counts of first-degree murder as well as a count of second-degree murder. The State concedes that it could not convict Johnson of both first-degree child abuse murder and first-degree domestic abuse murder. Furthermore, the State may not convict a person for both a crime and its lesser-included offense. Minn.Stat. § 609.04 (2008). Accordingly, the State could not convict Johnson of both first-degree murder and the lesser-included offense of second-degree murder. We vacate Johnson's convictions for first-degree domestic abuse murder and second-degree intentional murder. His conviction and sentence for first-degree child abuse mur-

der, however, will remain in force, and Johnson will serve a term of life in prison.

Affirmed in part and reversed in part.