*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1839**

State of Minnesota,
Respondent,

vs.

Alonzo Williams,
Appellant.

**Filed September 14, 2015
Affirmed in part and reversed and vacated in part
Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-14-7113

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hudson, Presiding Judge; Schellhas, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges his conviction of pattern of stalking conduct, arguing that he is entitled to a new trial because the district court committed plain error by not sua sponte

striking certain testimony. Appellant also seeks to vacate a domestic-abuse no-contact order issued by the court as part of his sentence. We affirm appellant's conviction but reverse and vacate the domestic-abuse no-contact order.

**FACTS**

Appellant Alonzo Williams and T.J. had a romantic relationship that ended in or about August 2013. Williams thereafter made repeated attempts to contact T.J. and her family members by telephone, text messages, and unwelcome visits to T.J.'s home. In November 2013, T.J. obtained a harassment restraining order (HRO) against Williams, but Williams continued to call and text message T.J. Based on the timing and content of the calls and text messages, T.J. believed that Williams was watching her, and sometimes the text messages were threatening. T.J. and her daughter also believed that Williams attempted to break into T.J.'s home. And Williams once approached T.J.'s daughter in a restaurant and told her to tell T.J. that if T.J. did not stop reporting Williams, the daughter would come home to find T.J. dead. In January 2014, after unsuccessful attempts to enforce the HRO, T.J. obtained an order for protection (OFP) against Williams.

Respondent State of Minnesota charged Williams with several offenses based on his contact with T.J., and a jury found Williams guilty of pattern of stalking conduct, terroristic threats, and violation of an HRO. The district court sentenced Williams to 43 months' imprisonment for his conviction of pattern of stalking conduct and issued a domestic-abuse no-contact order (DANCO) prohibiting Williams from having any contact with T.J.

This appeal follows.

2

**D E C I S I O N**

*Admissibility of testimony*

T.J. testified about the following three incidents, which the state did not identify in the charging portion of the complaint: (1) her vehicle stopped working properly due to sugar being placed in the gas tank; (2) her home was burglarized and a bottle of sparkling juice was taken; and (3) messages that read, "Live each day as if it was your last, one day it will be," and "I got you," were written in dirt on the windows of her vehicle. T.J. testified that she knew or believed that Williams was the perpetrator of each incident.

Williams seeks a new trial on the basis that the district court failed to sua sponte strike T.J.'s testimony regarding the three incidents, arguing that the testimony was either *Spreigl* or relationship evidence and did not satisfy the requirements for admission. "[Appellate courts] afford trial courts considerable discretion in admitting evidence." *State v. Martinez*, 725 N.W.2d 733, 737 (Minn. 2007). "[Appellate courts] review their evidentiary rulings for an abuse of that discretion." *Id.* "[Appellate courts] will not reverse a trial court's findings unless those findings are clearly erroneous." *Id.* Williams did not object to T.J.'s testimony at trial. "Failure to object to the admission of evidence generally constitutes a waiver of the right to appeal on that basis; however, [an appellate court] has discretion to consider an error not objected to at trial if it is plain error that affects substantial rights." *Id.* at 738; *accord State v. Griller*, 583 N.W.2d 736, 740, 742 (Minn. 1998).

To establish plain error, an appellant must show (1) error, (2) that is plain, and (3) that affects substantial rights. *Griller*, 583 N.W.2d at 740. "An error is plain if it is

3

clear or obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Vang*, 847 N.W.2d 248, 261 (Minn. 2014). "The third prong is satisfied if . . . there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *Id.* "Even if the answer to all three inquiries is 'yes,' [appellate courts] will order a new trial only if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *State v. Bahtuoh*, 840 N.W.2d 804, 811 (Minn. 2013).

Williams argues that the state offered testimony regarding the incidents as either *Spreigl* or relationship evidence. The state conversely argues that it offered the testimony as direct evidence of Williams's guilt of the offense of pattern of stalking conduct.

> A person who engages in a pattern of stalking conduct with respect to a single victim . . . which the actor knows or has reason to know would cause the victim under the circumstances to feel terrorized or to fear bodily harm and which does cause this reaction on the part of the victim, is guilty of a felony . . . .
>
> [A] 'pattern of stalking conduct' means two or more acts within a five-year period that violate or attempt to violate [specified statutes] . . . .

Minn. Stat. § 609.749, subd. 5(a), (b) (2012).

In *State v. Cross*, the appellant challenged his conviction of domestic-abuse homicide under Minn. Stat. § 609.185(6) (1996), arguing that the district court erred "by not subjecting . . . evidence of past domestic violence to judicial scrutiny before it was presented to the jury" and maintaining that "the trial court should have scrutinized the evidence to determine whether . . . the prior misconduct could be established by the state

4

by clear and convincing evidence." 577 N.W.2d 721, 723, 725 (Minn. 1998). The supreme court disagreed, determining that the state offered evidence of the appellant's previous acts of domestic abuse not as *Spreigl* evidence but rather "as direct evidence . . . to prove an element of the offense with which [the appellant] was charged, namely, that he had engaged in a 'past pattern of domestic abuse.'" *Id.* at 725 (quoting Minn. Stat. § 609.185(6)). The court reasoned that "the state must be allowed to offer relevant evidence" and, "already bearing the heavy burden of proving the offense beyond a reasonable doubt, should not be further hampered from proving its case." *Id.* The court concluded:

> Since proof of prior incidents of domestic abuse is necessary to establish an element of the crime charged, we believe that the state must be allowed to offer relevant evidence. We hold today that evidence of other criminal acts that is directly probative of a past pattern of domestic abuse, under Minn. Stat. § 609.185(6), is not [*Spreigl*] evidence . . . .

*Id.*

Since *Cross* was decided, the supreme court has clarified that to establish a pattern of abuse "the state must prove at least two incidents beyond a reasonable doubt." *See State v. Johnson*, 773 N.W.2d 81, 87 (Minn. 2009). But the state need not prove the occurrence of more acts than necessary to establish a pattern, even if more acts are alleged. *See, e.g.*, *State v. Bustos*, 861 N.W.2d 655, 661 (Minn. 2015) ("[W]hen the State alleges prior acts in excess of what is necessary to prove a past pattern, not all of the prior acts need to be proven beyond a reasonable doubt . . . ."); *Johnson*, 773 N.W.2d at 86 ("We have said in the past that the State may prove a pattern beyond a reasonable doubt

5

even if the State does not prove every claimed predicate act of the pattern beyond a reasonable doubt."); *State v. Kelbel*, 648 N.W.2d 690, 702 (Minn. 2002) ("[F]or the same reasons as in *Cross*, we conclude that the plain language of section 609.185(5) does not require proof beyond a reasonable doubt as to each of the acts constituting a 'past pattern of child abuse.'" (quoting Minn. Stat. § 609.185(5) (2000))).

Here, the challenged testimony was probative of whether Williams had committed burglary, damage to property, and terroristic threats, *see* Minn. Stat. §§ 609.582 (burglary), .595 (damage to property), .713 (terroristic threats) (2012), which are predicate offenses for pattern of stalking conduct, *see* Minn. Stat. § 609.749, subds. 5(b)(3), (12), (13). The testimony therefore was admissible as relevant evidence offered to prove an element of the offense of pattern of stalking conduct: the commission of two or more predicate offenses. Because the district court did not commit plain error by not sua sponte striking admissible testimony, we affirm the court's denial of Williams's motion for a new trial and affirm his conviction.

*DANCO as part of sentence*

The parties agree that the district court lacked authority to impose a DANCO as part of Williams's sentence. The parties are correct. The supreme court has stated that "the legislature, having the power to define what acts constitute criminal conduct, necessarily retains the power to define the punishment for such acts." *State v. Osterloh*, 275 N.W.2d 578, 580 (Minn. 1978). "Minnesota courts therefore do not have inherent authority to impose terms or conditions of sentences for criminal acts and must act within

the limits of their statutory authority when imposing sentences." *State v. Pugh*, 753 N.W.2d 308, 311 (Minn. App. 2008), *review denied* (Minn. Sept. 23, 2008).

Here, the district court sentenced Williams for pattern of stalking conduct, a felony offense. *See* Minn. Stat. § 609.749, subd. 5(a). Minnesota Statutes section 609.10, subdivision 1 (2012), sets forth the sentences available for felony offenses, and Minnesota Statutes section 609.749, subdivision 5(a), defines the maximum sentence for pattern of stalking conduct. No statutory authority exists for imposition of a DANCO as part of a sentence for pattern of stalking conduct. The district court erred by imposing the DANCO as part of Williams's sentence, and we therefore reverse and vacate the DANCO.

**Affirmed in part and reversed and vacated in part.**