STATE OF MINNESOTA

IN SUPREME COURT

A13-0961

McLeod County                                          Anderson, J.
                                        Dissenting, Wright, J.,
                                    Gildea, C.J., and Dietzen, J.

State of Minnesota,

                    Respondent,

vs.                                                  Filed:  April 1, 2015
                                        Office of Appellate Courts

David Muniz Bustos,

                    Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael K. Junge, McLeod County Attorney, James A. Schaeffer, Assistant County Attorney, Glencoe, Minnesota for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      The district court committed plain error when it precluded defense counsel from arguing that the State had failed to prove any alleged incident of prior domestic abuse beyond a reasonable doubt.

1

2.     The district court also committed plain error when it gave the jury an incorrect definition of domestic abuse.

3.     The cumulative effect of the district court's errors affected appellant's substantial rights. A new trial on the charge of first-degree domestic-abuse murder is required because the errors, taken together, seriously affected the fairness, integrity, and public reputation of judicial proceedings.

4.     There is no reasonable possibility that the exclusion of the preliminary breath test results contributed to the jury's finding of guilt on the second-degree intentional murder charge. Therefore, even if the exclusion was erroneous, any potential error was harmless beyond a reasonable doubt.

Affirmed in part, reversed in part, and remanded for a new trial.

O P I N I O N

ANDERSON, Justice.

A jury found David Muniz Bustos guilty of first-degree murder while committing domestic abuse, Minn. Stat. § 609.185(a)(6) (2014), second-degree intentional murder, Minn. Stat. § 609.19, subd. 1(1) (2014), second-degree felony murder, Minn. Stat. § 609.19, subd. 2(1) (2014), and third-degree murder, Minn. Stat. § 609.195(a) (2014). In this direct appeal, Bustos seeks a new trial on the first-degree domestic-abuse murder charge, arguing that the district court committed reversible error when it instructed the jury on the law and when it limited defense counsel's closing argument. Bustos also argues that he is entitled to a new trial on the charge of second-degree intentional murder

2

because the district court committed reversible error when it excluded relevant and material evidence.

We reverse Bustos's first-degree murder conviction and remand for a new trial on that charge because the district court committed multiple plain errors that, taken cumulatively, seriously affected the fairness, integrity and public reputation of the judicial proceedings. We also conclude that any alleged error based on the exclusion of Bustos's preliminary breath test results was harmless beyond a reasonable doubt.

In 2011, Bustos and Dominga Limon began a romantic relationship that, by February 2012, had lasted for eight months. During part of that period, Bustos and Limon lived together in Silver Lake. After Limon moved to Glencoe to start a new job, the couple continued to date. On the night of the murder, February 21, 2012, Bustos went to Limon's apartment around 7:00 p.m. Prior to arriving, Bustos drank 18 cans of beer. The record is not clear on when Bustos consumed the beer, but Bustos testified on cross-examination that he had "drunk the beer in the morning, and then by the evening, I had already had some food and everything, so I wasn't . . . drunk." Limon left the apartment around 9:00 p.m. to meet her daughter, who was planning to stay at Limon's apartment. While Limon was away, Bustos drank shots of vodka.

After Limon and her daughter returned to the apartment, Limon prepared for work. Limon asked her daughter to hide the alcohol from Bustos because he was intoxicated. Limon's daughter overheard Limon and Bustos arguing. During the argument, Bustos accused Limon of preparing to see her new boyfriend rather than preparing for work. Limon told Bustos that he could either sleep until he was sober or leave right away.

3

Limon's daughter went outside to retrieve the rest of her belongings from her car and send a text message to her boyfriend. She was outside the apartment for approximately 10 minutes when she heard her mother yelling for her. As she went inside, she looked through the window and believed she saw Bustos striking her mother. Limon's daughter ran inside and forced Bustos to leave the apartment by hitting him with her keys and throwing a pan at him. She called 911 as Bustos left the apartment.

After leaving the apartment, Bustos walked up and down the street in front of the apartment, yelling that he was part of a gang and that he was not afraid of the police. When Limon's daughter returned to the apartment, Limon was lying on the floor, surrounded by blood. The police arrived shortly after the emergency call and observed Bustos running in the street near the apartment. Bustos first ran toward the police; then he stopped and ran in the opposite direction. The police reached Bustos and handcuffed him. One arresting officer testified that Bustos smelled "very heavily of alcohol." The other arresting officer testified that Bustos's speech was very slurred and his balance was staggered. The officers took Bustos into custody.

One of the responding officers entered the apartment, where she saw Limon on the living-room floor surrounded by blood and vomit. Limon had seven stab wounds to her chest and left arm along with three stab wounds to her right hand. Limon told the paramedics that Bustos had stabbed her with a knife. An officer later recovered a bloody knife from underneath an entertainment center in the living room. After Limon arrived at the emergency room, she was airlifted to Hennepin County Medical Center, where she

4

died from a lack of oxygen to her brain due to blood loss caused by the multiple stab wounds.

Bustos, who became increasingly uncooperative at the jail, was placed in a holding cell because of his conduct. Several officers observed that Bustos appeared intoxicated at the time of his arrest. Around 7:30 a.m. the following morning, the police chief met with Bustos to take his statement. Because the police chief believed Bustos was still impaired, the police chief had a preliminary breath test (PBT) administered. The PBT registered an alcohol concentration of .153. The police chief decided not to take Bustos's statement at that time. Instead, Bustos's statement was taken approximately 12 hours later, at around 7:00 p.m. Bustos stated that he did not remember anything except waking up, seeing Limon lying on the floor, and running away.

A grand jury indicted Bustos for first-degree murder while committing domestic abuse and second-degree intentional murder. A jury trial followed. At the beginning of the trial, Bustos moved to admit the results of the PBT. The district court denied the motion because Minn. Stat. § 169A.41, subd. 2 (2014), prohibited the test from being admitted as evidence and, alternatively, because the PBT lacked evidentiary foundation.

At trial, the State introduced evidence of seven incidents of domestic abuse by Bustos against four different people. Two of the alleged offenses were against Limon. On February 19, 2012, just two days before the murder, Limon placed an emergency call while riding in a car with Bustos. The recording of the call was introduced as evidence during the trial. Limon stated during the call that Bustos was threatening her and she was afraid Bustos would harm her. The second alleged incident of domestic abuse committed

5

against Limon was introduced through Limon's daughter, who testified that on the night Limon was murdered, Limon yelled at Bustos, "Are you going to hit me again like you did previously, the other day?"

The State also alleged five incidents of alleged domestic abuse committed by Bustos against his daughters and estranged wife. The first incident occurred in 2002 when Bustos and his estranged wife argued and Bustos threw a phone at her face. Bustos's estranged wife also testified that in 2005 she and Bustos argued about a van, and during the argument, he pushed her. Bustos's daughter testified that in 2006 her father became very angry with her when she told him that she was pregnant; during the ride home, Bustos repeatedly hit a window with a box cutter in a manner that frightened her, and when they arrived home, Bustos pushed her into the house. When Bustos's other daughter called the police, Bustos raised his fist as if he was going to strike her. The final incident occurred at a family gathering in 2010. Bustos grabbed a banana and threw it at his estranged wife. She told him to leave her alone and threw it back at him. Bustos became angry and grabbed her by the neck. She testified that she was scared because everyone else was scared. Bustos's daughter testified that Bustos was holding a knife by his side during the incident.

Before closing arguments, the district court advised defense counsel that he could not argue that the State was required to prove any alleged incident of prior domestic abuse beyond a reasonable doubt. However, defense counsel was allowed to argue that a pattern requires more than one incident, and that the State was required to prove a pattern of domestic abuse beyond a reasonable doubt.

6

The district court gave the following instructions to the jury regarding first-degree murder while committing domestic abuse:

> Definition: The statutes of Minnesota provide that whoever causes the death of a human being while committing domestic abuse, when the defendant has engaged in a past pattern of domestic abuse upon the decedent or upon another family or household member and the decedent's death occurs under circumstances manifesting an extreme indifference to human life, is guilty of a crime.
>
> The Elements of Murder in the First Degree While Committing Domestic Abuse are:
>
> First . . . .
>
> Second, the injury causing the death of Dominga Limon occurred while the defendant was committing domestic abuse. Minnesota Statutes define "domestic abuse" as an act amounting to assault, domestic assault, criminal sexual conduct, terroristic threats, or similar acts if committed against a family or household member.
> Third, the defendant engaged in a past pattern of domestic abuse upon Dominga Limon or upon another family or household member. A "past pattern of domestic abuse" means prior acts of domestic abuse that form a reliable sample of observable traits or acts which characterize an individual's behavior. More than one prior act of domestic abuse is required for there to be a past pattern.
>
> Fourth . . . .
>
> Fifth . . . .
>
> If you find that each of these five elements has been proven beyond a reasonable doubt, the defendant is guilty. If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.

The jury returned a guilty verdict on each charged offense. The district court adjudicated Bustos guilty of first-degree domestic-abuse murder and sentenced him to life in prison with the possibility of release. The district court did not enter convictions on the other counts. Bustos now appeals.

7

I.

Bustos claims he is entitled to a new trial on the first-degree domestic-abuse murder conviction. He asserts two errors on appeal with respect to that charge. First, he argues that the district court erred by restricting defense counsel's closing argument regarding the State's burden of proof on the "past pattern of domestic abuse" element. Second, he argues that the district court's jury instructions improperly broadened the definition of "domestic abuse." We examine each alleged error in turn, and then determine whether the errors affected Bustos's substantial rights.

A.

First, Bustos asserts that the district court erred by depriving defense counsel of the opportunity to argue that the State failed to prove at least two prior incidents of domestic abuse beyond a reasonable doubt, which is required for a domestic-abuse murder conviction under Minn. Stat. § 609.185(a)(6). *See State v. Johnson*, 773 N.W.2d 81, 86 (Minn. 2009). Although it is not entirely clear whether Bustos objected at trial to the restriction placed on closing argument, based on our review of the record we conclude that he did not.[1] Because Bustos did not object at trial, he must establish that there was an error, the error was plain, and the error affected his substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). "An error is plain if it is clear or obvious;

---

[1] Although this determination causes us to analyze Bustos's claim under the plain-error standard, because Bustos has met his burden of proof under the more stringent standard, the result would have been the same if we had determined that Bustos had objected and we analyzed his claim under the less stringent harmless-error standard. *See State v. Hill*, 801 N.W.2d 646, 658 (Minn. 2011) (referring to the harmless-error standard as the "less onerous standard" as compared to the plain-error standard).

usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Vang*, 847 N.W.2d 248, 261 (Minn. 2014).

Each element of the crime of domestic-abuse murder must be proven beyond a reasonable doubt, *State v. Cross*, 577 N.W.2d 721, 727 (Minn. 1998), including the element of a past pattern of domestic abuse upon the victim or upon another family or household member. *See* Minn. Stat. § 609.185(a)(6). For purposes of section 609.185(a)(6), we have defined the phrase "past pattern" as conduct consisting of two or more prior acts that are proximate in time to each other and reflect "a regular way of acting." *State v. Hayes*, 831 N.W.2d 546, 554-55 (Minn. 2013); *see State v. Sanchez-Diaz*, 683 N.W.2d 824, 834 (Minn. 2004). The State therefore must prove beyond a reasonable doubt that the defendant engaged in conduct that involved more than one prior act, reflected "a regular way of acting," and was proximate in time.

But when the State alleges prior acts in excess of what is necessary to prove a past pattern, not all of the prior acts need to be proven beyond a reasonable doubt because no one predicate act is an element of the offense.[2] *Johnson*, 773 N.W.2d at 86-87; *State v. Kelbel*, 648 N.W.2d 690, 699-700 (Minn. 2002); *Cross*, 577 N.W.2d at 727 (concluding that the State does not have to prove each underlying act of domestic abuse beyond a reasonable doubt, as long as the jury finds that at least two of the underlying acts were

---

[2]     Moreover, when the State has offered more than two underlying acts as evidence of the pattern of domestic abuse, jurors may disagree about which acts make up the pattern of abuse. *Kelbel*, 648 N.W.2d at 702. But the jurors must agree that at least two underlying acts of domestic abuse were proven beyond a reasonable doubt, even if they disagree about which two acts satisfy that requirement. *Id.*

9

proven). In describing this principle, we have said that "if the state presents evidence of underlying acts A, B, C, and D, it is not reversible error for there to be insufficient evidence of D, if A, B, and C are sufficient to establish a pattern of domestic abuse beyond a reasonable doubt." *Kelbel*, 648 N.W.2d at 699-700. But it does not follow from this principle that the State can prove a pattern beyond a reasonable doubt without proving *any* prior act beyond a reasonable doubt. *Johnson*, 773 N.W.2d at 87.

We acknowledge that this is a complicated area of law, but we conclude that the district court misinterpreted our precedent during Bustos's trial, when it told defense counsel that he could not argue to the jury during closing argument that "the State is required to prove any alleged incident of prior domestic abuse . . . beyond a reasonable doubt . . . ." The error is illustrated by the example used in *Kelbel* that assumed the State presented evidence of underlying acts A, B, C, and D. As noted above, although it would be improper for defense counsel to argue that the jury should acquit the defendant simply because the State failed to prove D beyond a reasonable doubt, it would not be improper for defense counsel to argue that the jury should acquit the defendant if the State failed to prove A, B, C, *and* D beyond a reasonable doubt. The State cannot prove a pattern beyond a reasonable doubt if it proves none of the prior acts beyond a reasonable doubt. *See Johnson*, 773 N.W.2d at 86-87. Defense counsel therefore must be allowed to argue

10

that an acquittal is appropriate if the State fails to prove any of the prior incidents beyond a reasonable doubt.[3]

We conclude that the district court's restriction on defense counsel's closing argument contradicted well-established case law and constituted plain error.[4] We need not determine if this error, standing alone, affected Bustos's substantial rights because the effect of this error and another error discussed in the following section, taken together, warrant a new trial. *See State v. Keeton*, 589 N.W.2d 85, 88 (Minn. 1998).

B.

Bustos also argues that the district court committed reversible error by defining domestic abuse in the jury instructions more broadly than its statutory definition in Minn.

---

[3]    The dissent argues that this error did not affect Bustos's substantial rights because the district court allowed defense counsel to address each underlying act, argue why that act did not constitute domestic abuse, and argue that the past-pattern element must be proven beyond a reasonable doubt. Critically, we have said that the State must prove more than one of the underlying acts beyond a reasonable doubt, *Cross*, 577 N.W.2d at 727, and the district court's error deprived Bustos of the opportunity to explain to the jury how to apply the standard of proof to the underlying acts. Consequently, a juror could have mistakenly concluded the past-pattern element had been proven beyond a reasonable doubt without also concluding that at least two of the underlying acts had been proven beyond a reasonable doubt. The closing argument for the defense was severely crippled as a consequence of the district court's decision.

[4]    We disagree with the dissent's assertion that our conclusion necessitates reversal for any district court error involving the proof-beyond-a-reasonable-doubt standard. Plain- or harmless-error analysis requires us to consider the specific record of each case. In the cases cited by the dissent, we determined that the error did not affect the defendant's substantial rights. We come to the opposite conclusion here, for the reasons discussed below. Moreover, because we rely on a combination of errors to grant Bustos a new trial, we offer no opinion as to whether this error, standing alone, would require reversal. This particular set of errors is unlikely to present itself in the future, thus making the dissent's concerns unfounded.

11

Stat. § 609.185(e) (2014).[5]   Because Bustos did not object to the jury instruction at the district court, we again review for plain error.  *Griller*, 583 N.W.2d at 740.  Minnesota Statutes § 609.185(e) provides:

"[D]omestic abuse" means an act that:

(1) constitutes a violation of section 609.221, 609.222, 609.223, 609.224, 609.2242, 609.342, 609.343, 609.344, 609.345, 609.713, *or any similar laws of the United States or any other state* and

(2) is committed against the victim who is a family or household member as defined in section 518B.01, subdivision 2, paragraph (b).

(emphasis added).   Bustos argues that the district court misstated the law when it instructed the jury that the "Minnesota statutes define 'domestic abuse' as an act amounting to assault, domestic assault, criminal sexual conduct, terroristic threats, *or similar acts* if committed against a family or household member" (emphasis added). Bustos asserts that this instruction is inconsistent with the statutory language because the district court conveyed that any act similar to domestic abuse, such as a family argument, constitutes domestic abuse.

We agree with Bustos that the district court committed plain error when it instructed the jury that domestic abuse includes other "similar acts," given that Minn. Stat. § 609.185(e) includes only the enumerated Minnesota crimes and violations of "any similar laws of the United States or any other state."  The "similar laws" language in the

---

[5]     After Bustos's trial, the definition of "domestic abuse" for purposes of domestic-abuse murder was renumbered from Minn. Stat. § 609.185(c) to Minn. Stat. § 609.185(e). *See* Act of May 21, 2014, ch. 302, § 1, 2014 Minn. Laws 1847, 1848.  The definition itself was unchanged. *See id.*

12

statute does not include "similar acts," as the district court's instruction stated. Rather, it includes only "similar" federal crimes, or crimes of other states. Thus, by including the "similar acts" language, the district court erroneously expanded the definition of domestic abuse. The jury could have reasonably, and incorrectly, believed the definition of domestic abuse includes other Minnesota crimes that are similar to the crimes listed or, even more troubling, *noncriminal* acts that are similar to the crimes listed.

Because the definition of domestic abuse in Minn. Stat. § 609.185(e) includes only the enumerated Minnesota crimes and "similar" federal crimes or crimes committed in other states, the definition of domestic abuse given in the jury instruction encompasses a substantially larger range of conduct than the actual statutory definition of domestic abuse. The jury instruction on the definition of "domestic abuse" was therefore plainly erroneous.

C.

Next, we determine whether the restriction on defense counsel's closing argument and the improper definition of domestic abuse in the jury instruction, taken cumulatively, affected Bustos's substantial rights. *Griller*, 583 N.W.2d at 740; *see State v. Mayhorn*, 720 N.W.2d 776, 792 (Minn. 2006) (Anderson, G. Barry, J., dissenting) (stating that cumulative plain error must satisfy the *Griller* test). Plain error affects a defendant's substantial rights if "there is a reasonable likelihood that the error[s] had a significant effect on the jury's verdict." *Vang*, 847 N.W.2d at 261.

Both errors related to the jury's determination of the same element: whether Bustos engaged in a past pattern of domestic abuse. The restriction on closing argument

13

deprived defense counsel of the opportunity to argue that the State failed to prove at least two prior incidents of domestic abuse beyond a reasonable doubt, and the improper definition of "domestic abuse" erroneously broadened the scope of predicate offenses that satisfy the element.[6] Further, the record does not contain overwhelming evidence of a pattern of domestic abuse and Bustos contested the existence of a pattern of domestic abuse at trial. It is reasonably likely that these errors, taken cumulatively, had a significant effect on the verdict, and therefore the errors affected Bustos's substantial rights.

## II.

Having concluded that Bustos has established plain errors affecting his substantial rights, we must consider whether Bustos is entitled to a new trial. A plain error affecting substantial rights warrants reversal only if the error must be addressed to ensure the fairness, integrity, or public reputation of the judicial proceedings. *Griller*, 583 N.W.2d at 742. Put differently, plain errors affecting Bustos's substantial rights, without more, are insufficient to warrant a new trial. *United States v. Olano*, 507 U.S. 725, 737 (1993).

Prohibiting counsel from arguing that the State has failed in its essential duty to prove a defendant's guilt beyond a reasonable doubt is no ordinary error. The roots of

---

[6] The dissent concludes that the only reasonable interpretation of "similar acts" in the context of Minn. Stat. § 609.185(e) is conduct that is criminal in nature; therefore, the improper jury instruction did not affect Bustos's substantial rights because the jury would not have believed that the definition of domestic abuse could include noncriminal acts. Although we disagree with the dissent's argument that the unifying thread of "criminal acts" and the doctrine of ejusdem generis would have been obvious to a jury without legal training, we need not resolve that disagreement here because our conclusion is based on a combination of errors.

14

the beyond-a-reasonable-doubt standard are founded on an effort to reduce the risk of an erroneous conviction. James Q. Whitman, *The Origins of Reasonable Doubt* 6 (2008). In particular, according to Whitman, jurors in the medieval and early modern times worried that falsely convicting an innocent man, especially of crimes involving the standard pre-nineteenth-century punishments of execution or mutilation, was a mortal sin that put them at risk of damnation. *Id.* But, regardless of the origin of the requirement, by the 1700s it was commonly held that "[a] judge who is in doubt must refuse to judge." *Id.* at 4. Our nation's history includes a well-known example of this principle. John Adams, defending British soldiers before a colonial jury in 1770, argued to the jury during the Boston Massacre trials, "Where you are doubtful never act: that is, if you doubt of the prisoner's guilt, never declare him guilty; that is always the rule, especially in cases of life." *Id.* at 4, 216 & n.19. This requirement became commonly expressed as proof beyond a reasonable doubt.

Thus, the beyond-a-reasonable-doubt standard, rooted in a fear of erroneous convictions, "has characterized the Anglo-American criminal justice system for more than two hundred years." Barbara J. Shapiro, *"Beyond Reasonable Doubt" and "Probable Cause"* 1 (1991). As the Supreme Court has explained:

> The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law."

*In re Winship*, 397 U.S. 358, 363 (1970) (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)). The Court has also acknowledged:

> There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. . . . To this end, the reasonable-doubt standard is indispensable, for it impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.

*Id.* at 364 (internal quotation marks omitted). By restricting defense counsel's use of the indispensable reasonable-doubt standard, the district court increased the risk of erroneous conviction. *See State v. Baird*, 654 N.W.2d 105, 114 (Minn. 2002).

This erroneous restriction was particularly serious because, as the Supreme Court has noted:

> It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. *And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt*.

*Herring v. New York*, 422 U.S. 853, 862 (1975) (emphasis added). The Supreme Court has also labeled the closing argument the most important aspect of partisan advocacy, explaining that "[i]n a criminal trial, which is in the end basically a factfinding process, no aspect of [ ] advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment." *Id.*

The improper jury instruction magnified the deleterious effect of the impermissible restriction on closing argument. Jury instructions also guard against

16

erroneous convictions by ensuring that the State establishes each element of a crime beyond a reasonable doubt. *See State v. Williams*, 324 N.W.2d 154, 160 (Minn. 1982). When faced with an improper instruction and an improper restraint on vigorous advocacy regarding the State's burden of proof, a jury is ill equipped to determine whether the State met the burden of proving an offense beyond a reasonable doubt. *See State v. Vance*, 734 N.W.2d 650, 661-62 (Minn. 2007) (remanding for new trial after jury instruction misstated intent element); *cf. Rose v. Clark*, 478 U.S. 570, 594 (1986) (Blackmun, J., dissenting) ("The erroneous instruction invites the jury to abdicate its constitutional responsibility to decide for itself whether the State has proved every element of the offense beyond a reasonable doubt.").

The district court committed multiple plain errors that disarmed defense counsel of an indispensable tool during a critical stage of the proceedings and broadened the definition of an element of the offense to include noncriminal conduct. We conclude that a failure to correct the erroneous limitation on defense counsel's final argument during Bustos's trial, in combination with the improper jury instruction on the definition of domestic abuse, seriously affected the fairness, integrity or public reputation of the judicial proceedings.[7] Therefore, we reverse Bustos's conviction of first-degree domestic-abuse murder and grant him a new trial on that charge.

---

[7] The dissent alleges that our analysis "conflates the third and fourth prongs" of the plain-error test. We have demonstrated, however, that the district court's errors regarding the proof-beyond-a-reasonable-doubt standard and the past-pattern jury instruction not only significantly affected Bustos's trial, but left unchecked would also have a substantial and deleterious effect on future trials (and, not insignificantly, undercuts the historic

(Footnote continued on next page.)

17

We reiterate, however, that we do not decide here whether either error by itself requires a new trial. *See State v. Underwood*, 281 N.W.2d 337, 344 (Minn. 1979). Instead, because of the interrelatedness and serious nature of the errors here, a new trial is necessary to ensure fundamental fairness.

III.

Because we reverse the first-degree murder conviction, it is also necessary to address Bustos's challenge to the guilty verdict in connection with the second-degree murder charge. In addition to first-degree domestic-abuse murder, Bustos was charged with second-degree intentional murder in connection with Limon's death, and he raised the defense of voluntary intoxication. Bustos argues that the district court violated his right to present the defense of voluntary intoxication and prejudiced his case by excluding evidence of a preliminary breath test (PBT) that showed that Bustos had a .153 blood-alcohol level 8 hours after the stabbing.

We will not reverse a district court's evidentiary ruling absent a clear abuse of discretion. *State v. Medal-Mendoza*, 718 N.W.2d 910, 916 (Minn. 2006); *see also State v. Henderson*, 620 N.W.2d 688, 698 (Minn. 2001) ("[W]hen a defendant alleges that his inability to present a defense violates his constitutional rights, evidentiary questions are

(Footnote continued from previous page.)
standard of proof imposed on the State in criminal trials). We suggest, rather, that it is the dissent that merges the two prongs. The dissent states that the errors did not affect Bustos's substantial rights because the State provided "overwhelming evidence that Bustos had committed a pattern of domestic abuse," yet later similarly concludes that a new trial is not necessary to ensure the fairness, integrity, or public reputation of judicial proceedings because the evidence of Bustos's guilt is "overwhelming and uncontroverted." We are therefore puzzled by the dissent's accusation.

18

reviewed for abuse of discretion."). Bustos has the burden of establishing that the district court abused its discretion and that Bustos was prejudiced by the error. *State v. Nunn*, 561 N.W.2d 902, 907 (Minn. 1997). Under an abuse-of-discretion standard, we may reverse the district court when the district court's ruling "is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011).

The district court gave two alternative reasons for excluding the PBT results. One was that under *State v. Dille*, 258 N.W.2d 565 (Minn. 1977), there was no foundation guaranteeing the reliability of the PBT, so "the test result is not probative as a measurement and, hence, irrelevant." The court alternatively determined that Minn. Stat. § 169A.41, subd. 2, applied to exclude the PBT results.[8]

It is unnecessary to decide whether the district court abused its discretion in excluding the PBT results, because even if the district court did abuse its discretion by excluding the evidence, the error was harmless and does not warrant reversal. *See State v. Post*, 512 N.W.2d 99, 102 (Minn. 1994). We have articulated two standards of harmless-error review depending on whether the error implicates a constitutional right. *See State v. Juarez*, 572 N.W.2d 286, 291-92 (Minn. 1997). Because Bustos is not entitled to relief under the more stringent constitutional standard, it is unnecessary to decide which standard applies here.

---

[8]    Minnesota Statutes § 169A.41, subd. 2, states that preliminary screening tests "must not be used in any court action," apart from the limited exceptions listed.

Even assuming the district court committed constitutional error when it excluded evidence of Bustos's PBT, reversal is not warranted if the error was "harmless beyond a reasonable doubt." *Post*, 512 N.W.2d at 102. We determine whether an error is harmless beyond a reasonable doubt by analyzing "whether the error reasonably could have impacted upon the jury's decision." *Juarez*, 572 N.W.2d at 292; *see State v. Richardson*, 670 N.W.2d 267, 277 (Minn. 2003) (stating error warrants reversal if "there is a reasonable possibility that the [error] complained of may have contributed to the conviction." (alteration in original) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967))).

The exclusion of the PBT results in this case was harmless beyond a reasonable doubt. Bustos argues that the jury would have been greatly influenced by learning that, 8 hours after stabbing Limon, he was still close to two times the legal intoxication limit for drivers, and that these PBT results would have removed any doubt the jurors had as to whether he was intoxicated. But significant other evidence establishing that Bustos was intoxicated was admitted at trial. For example, a police video of Bustos's arrest was played for the jury, which showed Bustos running and stumbling. There was also testimony by both State and defense witnesses indicating that Bustos was intoxicated or had been drinking, including testimony that Bustos's statement was not taken by police the following morning because there was still an odor of alcohol emanating from him. In light of the other evidence of Bustos's intoxication, the introduction of the PBT results would have merely been cumulative. *See Huff v. State*, 698 N.W.2d 430, 437-38 (Minn. 2005) (determining that the exclusion of cumulative evidence was not prejudicial).

20

Furthermore, the State did not argue in its closing that Bustos was not intoxicated; rather, the State argued that notwithstanding Bustos's intoxication, Bustos still intended to kill Limon. Due to the significant differences in the metabolization of alcohol and the difference in tolerance levels, the level of intoxication reflected by the PBT was of limited probative value as to whether Bustos had the ability to form the requisite intent. Because the jury heard a significant amount of other evidence that Bustos was acting in a manner consistent with intoxication and the PBT results only showed that Bustos had been drinking and not whether he was able to form the requisite intent, there is no reasonable possibility that the exclusion of the PBT results contributed to Bustos's conviction. Therefore, we conclude that the exclusion of the PBT results was harmless beyond a reasonable doubt, and we affirm the guilty verdict for second-degree intentional murder.

## IV.

For the reasons stated earlier, we reverse Bustos's conviction for first-degree domestic-abuse murder and remand for a new trial. Because we reverse Bustos's first-degree murder conviction, we do not address his other arguments on appeal. We reject the claim of error in connection with the second-degree intentional murder charge because the error, if any, was harmless under the applicable standards.

Affirmed in part, reversed in part, and remanded for a new trial on the first-degree domestic-abuse murder charge.

D I S S E N T

WRIGHT, Justice (dissenting).

The majority concludes, and I agree, that a past pattern of domestic abuse may be proven, as is the case here, by incidents of domestic abuse against more than one victim. I also agree that the district court utilized the term "any" in an ambiguous manner when it precluded defense counsel from arguing that the State was required to prove "any" alleged incident of prior domestic abuse beyond a reasonable doubt. I disagree, however, that this ambiguous use of the term "any," when combined with any error in the definition of domestic abuse provided to the jury by the district court, was a plain error that affected Bustos's substantial rights. Because Bustos is both entitled to and in fact received a fair trial, not a perfect one, I respectfully dissent.[1]

I.

The district court advised defense counsel, "[Y]ou may point out to the jury, as the JIG indicates, there must be more than one prior incident to constitute a pattern." The district court never suggested, however, that defense counsel could not argue that the State failed to prove *a pattern of domestic abuse* beyond a reasonable doubt. The district court concluded that *State v. Clark*, 739 N.W.2d 412 (Minn. 2007), "indicates that the State must prove a past pattern of domestic abuse beyond a reasonable doubt, but not each individual incident that might comprise that pattern." The district court's direction

---

[1] Because I would affirm Bustos's conviction of first-degree murder while committing domestic abuse, I would not reach Bustos's argument that the district court erred by excluding evidence material to his defense for the second-degree intentional murder charge.

and reasoning are consistent with our ruling in *State v. Johnson*, in which we concluded, "[I]n a case where there are multiple underlying acts in excess of what is necessary to prove a pattern, not all of the underlying acts need to be proven beyond a reasonable doubt." 773 N.W.2d 81, 87 (Minn. 2009). Based on its reading of *Clark*, the district court precluded defense counsel from arguing to the jury that "the State is required to prove *any* alleged incident of prior domestic abuse occurring before February 21, 2012, beyond a reasonable doubt; that's not required." (Emphasis added.) The majority concludes that, by precluding defense counsel from arguing that the State was required to prove "any" alleged incident of prior domestic abuse beyond a reasonable doubt, the district court plainly prohibited defense counsel from arguing that the State failed to prove "every" alleged incident of prior domestic abuse beyond a reasonable doubt. I disagree.

The district court's use of the term "any" was ambiguous. One interpretation of the district court's instruction is that, consistent with *Clark* and *Johnson*, defense counsel could not argue that an acquittal was required if the State failed to prove beyond a reasonable doubt "any" one of the six alleged prior incidents of domestic abuse. Another interpretation of the instruction is that defense counsel could not argue that the State failed to prove "every" alleged incident of prior domestic abuse beyond a reasonable doubt. Because of this ambiguity, the alleged error did not clearly contravene *Johnson* and *Clark* and was not plain. *See State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). But, even if one assumes that the district court committed an error that was plain, the

error *does not* require a new trial because any such error did not affect Bustos's substantial rights.

The district court's restriction on closing argument did not prevent defense counsel from arguing that the State was required to prove a pattern of domestic abuse beyond a reasonable doubt. Nor did the district court's ruling prevent defense counsel from arguing that more than one prior act of domestic abuse was required to prove a past pattern. In fact, defense counsel *did* argue that the State failed to prove a past pattern of domestic abuse beyond a reasonable doubt. More specifically, defense counsel argued:

> This domestic abuse statute requires that the State prove beyond a reasonable doubt a past pattern of domestic abuse. And we submit that's not the case. They did not prove to you domestic abuse. They proved to you arguments in a family. I think that's consistent with the evidence.

Defense counsel then addressed each incident. Rather than argue that these incidents did not occur, defense counsel maintained that they were "not domestic abuse."

For example, regarding the 2010 incident with Bustos's estranged wife, defense counsel argued:

> There was no use of a knife in a threatening manner to his family. If he had a knife as he was cooking or whatever, or if he had box cutters or whatever, those were not used in a threatening manner. The statute requires a pattern of domestic abuse. It does not require a pattern of family arguments.

Addressing the emergency call, defense counsel argued: "[I]t's got to be that she's in fear of immediate bodily harm, not this—not that 'I just want this guy out of here. He's bugging me. He's harassing me;' that is not domestic abuse." The district court's restriction on closing argument did not prevent defense counsel from vigorously arguing that the State failed to prove "every" alleged incident of prior domestic abuse beyond a

reasonable doubt because none of the incidents was domestic abuse. Defense counsel deployed its arguments without impediment.

The prosecutor did not contest that the State was required to prove a pattern of domestic abuse beyond a reasonable doubt. Nor did the prosecutor dispute that more than one prior act of domestic abuse was required to prove a past pattern. In fact, the prosecutor correctly explained to the jury in his closing argument, "There must be at least two prior instances . . . . You don't need to agree on which ones they are. All that each of you needs to agree is that the past pattern of domestic abuse has been proven beyond a reasonable doubt."

The majority addresses the reasonable-doubt standard at length. The majority and I agree that the proof-beyond-a-reasonable-doubt standard is the bedrock of American criminal proceedings. However, I part ways with the majority based on the record. The majority's claim that the district court "disarmed defense counsel" of this indispensable legal standard lacks support in the record. The only standard of proof that the district court and the attorneys addressed with the jurors was the proof-beyond-a-reasonable-doubt standard. During closing argument, defense counsel deployed the reasonable-doubt defense no less than nine times, repeatedly reminding the jury that the State had the burden of proving Bustos "guilty beyond a reasonable doubt." Additionally, when instructing the jury on the elements of first-degree domestic abuse murder, the district court addressed each element. The element of a past pattern of domestic abuse was *not* omitted. The district court then instructed, "If you find that *each* of these five elements has been proven beyond a reasonable doubt, the defendant is

guilty.  If you find that *any* element has not been proven beyond a reasonable doubt, the defendant is not guilty."  (Emphasis added.)  There is no reasonable likelihood that the jurors applied a lesser standard of proof when considering the question of whether Bustos committed more than one prior act of domestic abuse.

Moreover, the State presented overwhelming evidence on more than one of the prior acts of domestic abuse.  First, the February 19, 2012 incident was captured on the emergency call recording.  Bustos could not argue that the incident did not occur. Because of the overwhelming evidence of its occurrence, he argued the only defense available—that the act was not domestic abuse.  Second, Bustos admitted that he was upset with his daughter, M.E., in 2006 when he learned that she was pregnant.  He also admitted that, after learning of M.E.'s pregnancy, he hit a box cutter against the window of the car in which the two sat.  Although Bustos claimed that he was merely trying to throw the box cutter out the window, he did not deny hitting the window with the box cutter.  Therefore, Bustos's only defense was that these acts were not domestic abuse. Because his admission defeated any argument that the State did not prove his actions beyond a reasonable doubt, this defense was unaffected by the district court's error. Consequently, there is no reasonable likelihood that the jury would have reached a different verdict had defense counsel's argument informed the jurors that the proof-beyond-a-reasonable-doubt standard applied to the finding of two or more prior acts of abuse.  This is particularly so because the State presented overwhelming evidence that Bustos had committed a pattern of domestic abuse.

The majority's rule renders any district court error involving the proof-beyond-a-reasonable-doubt standard, however inconsequential, per se reversible. This rule is contrary to our precedent. We have previously concluded that some errors regarding the proof-beyond-a-reasonable-doubt standard were not reversible error. For example, when the district court erroneously instructed the jury that the burden was on the defendant to prove duress, in violation of the defendant's Fourteenth Amendment due-process rights, we determined that the erroneous instruction did not affect the defendant's substantial rights. *State v. Charlton*, 338 N.W.2d 26, 31 (Minn. 1983). We reasoned that the defendant was not materially and substantially prejudiced because the district court fully instructed the jury on the presumption of innocence and on the State's ultimate burden of proof. *Id.* Furthermore, we reviewed the evidence and concluded, as the record supports here, that the State met its burden of proof beyond a reasonable doubt notwithstanding the jury-instruction error. *Id.*

Similarly, we concluded in *State v. Caine* that, when the jury instructions erroneously failed to advise the jury that the State had the burden to prove beyond a reasonable doubt that the defendant did not act under duress, the error did not affect the defendant's substantial rights. 746 N.W.2d 339, 355-56 (Minn. 2008). In reaching our conclusion, we considered the jury instructions as a whole and concluded that they were not "misleading or confusing on fundamental points of law." *Id.* We also concluded that the State's burden to prove *each* element was made clear throughout the rest of the jury instructions. *Id.*

Our analysis in *Charlton* and *Caine* applies with equal force here. The district court instructed the jury that each element of the offense must be proven beyond a reasonable doubt. Based on the strength of the evidence presented, no reasonable jury could have found that *at least two* of the incidents of prior domestic abuse committed by Bustos were not proven beyond a reasonable doubt.

In sum, the district court's restriction on defense counsel's closing argument did not plainly contravene the law because the restriction was subject to more than one reasonable interpretation. Moreover, even if we assume that an improper restriction was imposed, Bustos is not entitled to a new trial because the alleged error did not affect his substantial rights for four reasons. First, the restriction did not prevent Bustos's counsel from vigorously arguing his theory of defense—namely that, because none of the prior acts constituted domestic abuse, the State had failed to prove a past pattern of domestic abuse beyond a reasonable doubt. Second, the prosecutor never contested that the State was required to prove a past pattern of domestic abuse beyond a reasonable doubt or that more than one prior act of domestic abuse was required to prove a past pattern. Third, the *only* standard of proof that the district court, defense counsel, and the prosecutor addressed with the jurors was the proof-beyond-a-reasonable-doubt standard. And fourth, the State presented overwhelming evidence on *more than one* of the prior acts of domestic abuse, thereby clearly meeting its burden of proof.

## II.

The majority also concludes that the district court committed a reversible error by defining domestic abuse in the jury instructions more broadly than the statutory definition

of domestic abuse in Minn. Stat. § 609.185(e) (2014).[2]  Because Bustos failed to object to the jury instruction at trial, we apply the plain-error test.  *See State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998).  Bustos must establish that an error was committed, the error was plain, and the error affected his substantial rights.  *Id.*  If each requirement is met, we then determine whether the error must be addressed to ensure the fairness and integrity of judicial proceedings.  *State v. Baird*, 654 N.W.2d 105, 113 (Minn. 2002).

I agree with the majority that the district court committed an error that was plain because the jury instruction stated that other "similar acts" are included as domestic abuse, when Minn. Stat. § 609.185(e) uses the phrase "any similar laws of . . . any other state."  The jury instruction erroneously departed from the statutory definition of domestic abuse by implying that similar acts that are criminal under Minnesota law could qualify as domestic abuse.  This expanded definition ignores the plain language of section 609.185(e), which enumerates the Minnesota laws that constitute domestic abuse.

I disagree, however, with the majority's conclusion that the district court's jury instruction reasonably can be read to include other *noncriminal* acts that are *similar* to

---

[2]     Minnesota Statutes § 609.185(e) states:
        "[D]omestic abuse" means an act that:
        (1) constitutes a violation of section 609.221, 609.222, 609.223, 609.224, 609.2242, 609.342, 609.343, 609.344, 609.345, 609.713, *or any similar laws of the United States or any other state*; and
        (2) is committed against the victim who is a family or household member as defined in section 518B.01, subdivision 2, paragraph (b).
 (Emphasis added.)  This statute was renumbered in 2014; the definition was previously found in paragraph (c).

assault, domestic assault, criminal sexual conduct, or terroristic threats.[3]  Again, the jury

instruction, albeit erroneous, must be read in context.  Although the jury instruction

incorrectly used the phrase "or similar acts," rather than "other *criminal* acts," the context

in which the phrase was used—namely, as part of a list of *criminal* offenses—renders

unreasonable any interpretation of the phrase that includes noncriminal acts.  *See State v.*

*Moore*, 699 N.W.2d 733, 738-39 (Minn. 2005) (applying the doctrine of ejusdem generis,

which states that the meaning of general words is restricted by preceding particular

words, to a jury instruction).[4]

Having determined that the district court committed an error that was plain, the

next step in the analysis is to determine whether the error affected Bustos's substantial

rights.  *Baird*, 654 N.W.2d at 113.  An error affects a defendant's substantial rights when

---

[3]     The majority's contention that the jury instruction can be interpreted to include noncriminal acts differs from the argument raised by Bustos.  In his brief, Bustos argues that the use of "similar acts" rather than "other criminal acts" "conveyed to the jury that, in addition to the statute's delineated acts, any similar act *that is criminal* in Minnesota constitute[s] domestic abuse."  (Emphasis added.)

[4]     In *Moore*, we applied the doctrine of ejusdem generis to a jury instruction that contained the catch-all phrase "other serious bodily harm," concluding that the phrase should be interpreted "in the context of the . . . three alternative definitions."  699 N.W.2d at 738-39.  The majority claims that the crimes enumerated in the district court's jury instruction support a reasonable conclusion that the phrase "similar acts" refers to "noncriminal acts that are similar to the crimes listed."  The majority, however, fails to recognize that the district court provided the jurors definitions for two of the enumerated crimes—assault and domestic assault.  The district court instructed the jurors that both assault and domestic assault required the person to act *with an* "*intent to cause fear in another of immediate bodily harm or death, or intentionally inflicts or attempts to inflict bodily harm upon another.*"  Thus, despite the majority's assertion to the contrary, when read as a whole, as we must do, the jury instructions at issue here do not support a reasonable conclusion that the phrase "similar acts" refers to noncriminal acts.  This is so because the jurors were provided a unifying thread of intentional criminal acts.

there is a reasonable likelihood that the instruction had a significant effect on the jury verdict. *Id.*

This requirement of the plain-error analysis has not been met. The improper instruction would have had a significant effect on the jury verdict only if (1) the record supported a finding that Bustos committed a criminal act that did not constitute an assault or a terroristic threat, (2) the jury made such a finding, *and* (3) the jury found that two of the other alleged acts were not an assault or a terroristic threat. On this record, there is no *reasonable* likelihood that the jury found Bustos committed a criminal act that was not an assault or a terroristic threat.

First, the record does not support a finding that Bustos committed a *criminal* act that was not an assault or terroristic threat. At trial, the jury heard two different versions of the prior violent incidents. If the jurors believed the State's version, Bustos committed criminal acts that were either assaults or terroristic threats. If the jurors believed Bustos's version of events, the incidents were merely family arguments. Thus, despite Bustos's assertion to the contrary, the jury could not have found that he committed a *criminal* act that was something other than an assault or a terroristic threat because a "mere family argument" is not a crime under any Minnesota statute.

Even *if* the record supported a finding that Bustos committed a criminal act under Minnesota law that was not an assault or a terroristic threat, there is no reasonable likelihood that the jury made such a finding. In his closing argument, defense counsel explained that "the law is specific in defining domestic abuse" and that "[p]rior acts of domestic abuse have to include either intent to cause fear in another of immediate bodily

D-10

harm or death, or . . . the intentional infliction of bodily harm on another." Defense counsel emphasized that "[t]he statute requires a pattern of domestic abuse. It does not require a pattern of family arguments." In rebuttal, the prosecutor did not contest defense counsel's discussion of the definition of domestic abuse or otherwise suggest that a pattern of family arguments was sufficient to return a guilty verdict. Instead, the prosecutor emphasized that any threatened harm must be imminent, meaning "right now, right here." Because both parties argued the narrow definition of domestic abuse set forth in section 609.185(e), there is no *reasonable* likelihood that the jurors construed the "similar acts" language of the district court's jury instruction to define domestic abuse in a manner that includes family arguments or other noncriminal conduct.

Finally, there is no reasonable likelihood that the jury failed to find that more than one of the alleged acts were assaults or terroristic threats. From the evidence presented, no reasonable jury could conclude that Bustos's actions did not constitute a terroristic threat or domestic assault when Bustos grabbed his estranged wife around the neck while holding a knife in a manner that caused "everyone else" to be scared.[5] Nor could a reasonable jury determine—after hearing the recorded threat to Limon that he would "put [her] down"—that he did not commit a terroristic threat. Thus, Bustos has not met his

---

[5]     We previously have acknowledged that evidence of the effect of the assault on the victim is frequently introduced at trial as evidence of intent, even though evidence that the victim was fearful is not essential for a conviction of assault with intent to cause fear. *State v. Fleck*, 810 N.W.2d 303, 308 (Minn. 2012); *State v. Hough*, 585 N.W.2d 393, 396 (Minn. 1998). When the law is correctly applied to the facts of this case, Bustos's actions constitute domestic assault.

heavy burden of establishing that the erroneous jury instruction affected his substantial rights. In sum, based on the facts and circumstances presented by the evidence here, the district court did not commit reversible error by defining domestic abuse in the jury instructions more broadly than domestic abuse is defined in Minn. Stat. § 609.185(e).

### III.

The majority concludes that, even if one of the errors did not affect Bustos's substantial rights, the two errors cumulatively affected Bustos's substantial rights. I disagree. The third prong of the plain-error test is satisfied only when the error was "prejudicial and affected the outcome of the case." *Griller*, 583 N.W.2d at 741. To be prejudicial, there must be a "reasonable likelihood" that the errors "had a significant effect on the verdict of the jury." *Id.*

As I conclude above, there is no reasonable likelihood that the jury found Bustos committed a criminal act that was not an assault or a terroristic threat.[6] This conclusion

---

[6] We have stated that "the cumulative effect of trial errors can deprive a defendant of his constitutional right to a fair trial" in rare cases. *State v. Davis*, 820 N.W.2d 525, 538 (Minn. 2012). This case does not present that circumstance. In cases in which we have concluded that the cumulative effect of trial errors requires a new trial, the controverted evidence presents a very close case on the facts. *Id.* at 538-39. For example, in *State v. Underwood*, we concluded that multiple errors taken cumulatively warranted reversal because, "[u]nder these conditions, any error, however small, may have prejudiced defendant." 281 N.W.2d 337, 344 (Minn. 1979). The *Underwood* court stressed "that none of the aforementioned errors standing alone *or arising under different factual circumstances would necessarily be sufficient to require reversal*." *Id.* (emphasis added). Similarly, in *State v. Post*, we concluded that "the state's evidence . . . was sufficiently weak that different rulings by the trial court might well have resulted in different verdicts," and that the cumulative effects of evidentiary errors deprived the defendant of a fair trial. 512 N.W.2d 99, 104 (Minn. 1994). In contrast to the errors at

(Footnote continued on next page.)

would not be affected by whether the district incorrectly limited defense counsel's argument about reasonable doubt. The first error addressed by the majority pertains to whether Bustos *actually committed* the acts in question. The second error pertains to the *type* of act Bustos committed. Because these two errors address separate questions, there is no reasonable likelihood that the errors were prejudicial even when their effects are considered cumulatively. Because Bustos's substantial rights were not affected, I would affirm Bustos's conviction of first-degree murder while committing domestic abuse.

However, even if Bustos were able to show that the errors affected his substantial rights, he still would not be entitled to a new trial. In *United States v. Olano*, the United States Supreme Court made clear that a plain error that affects a defendant's substantial rights, without more, does not entitle a defendant to a new trial.[7] 507 U.S. 725, 737 (1993). Rather, a new trial will be granted only when it is necessary to ensure the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 736-37. Although

(Footnote continued from previous page.)
issue in *Underwood* and *Post*, the cumulative effect of the errors at issue here did not deprive Bustos of the constitutional right to a fair trial.

[7]    The majority acknowledges that "plain errors affecting Bustos's substantial rights, without more, are insufficient to warrant a new trial." The majority's discussion of the fourth prong of the plain-error test emphasizes the "particularly serious" nature of the errors and their potential effects on Bustos's trial. Such a discussion does not address the issue of why a new trial is necessary to ensure fairness, integrity, or public reputation of judicial proceedings in general. Instead, it largely duplicates the majority's analysis under the third prong of the plain-error test and conflates the third and fourth prongs. By holding in essence that a new trial is required because the "particularly serious" errors affected Bustos's substantial rights in his specific trial, the majority departs from the United States Supreme Court's well-reasoned analysis in *Olano*, 507 U.S. at 736-37.

the fairness, integrity, or public reputation of judicial proceedings is sometimes served by ordering a new trial when a defendant's substantial rights were affected by an error that was plain, that is not always the case. And that is not the case here.

In *Griller*, after describing the defendant's version of events as "far-fetched," we concluded that, "[g]ranting Griller a new trial under these circumstances would be an exercise in futility and a waste of judicial resources," which would thwart the integrity of judicial proceedings. 583 N.W.2d at 742. The United States Supreme Court has similarly concluded that granting a new trial in the face of uncontroverted or overwhelming evidence "encourages litigants to abuse the judicial process and bestirs the public to ridicule it." *Johnson v. United States*, 520 U.S. 461, 470 (1997) (citation omitted); *see also United States v. Cotton*, 535 U.S. 625, 634 (2002) (stating that "[t]he real threat then to the fairness, integrity, and public reputation of judicial proceedings would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial" (internal quotation marks omitted)). Here, in the face of uncontroverted and overwhelming evidence, which includes a 911 recording of one of the assaults, granting Bustos a new trial is unwarranted.


GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice Wright.

DIETZEN, Justice (dissenting).

I join in the dissent of Justice Wright.